**Milagros CANALES–JACOBS, Plaintiff,**

v.

**NEW YORK STATE OFFICE OF COURT ADMINISTRATION, Defendant.**

**No. 08 Civ. 03434(CM)(THK).**

United States District Court, S.D. New York.

Aug. 5, 2009.

Milagros Canales–Jacobs, Brooklyn, NY, pro se.

Pedro Angel Morales, NY State Office of Court Administration, New York, NY, for Defendant.

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING COMPLAINT

McMAHON, District Judge.

Milagros Canales–Jacobs was employed as a Senior Court Clerk by the defendant New York State Office of Court Administration for 25 years. After incidents in which she, *inter alia,* yelled at a judge, threw court papers and subjected the public to a barrage of obscenity, disciplinary charges were preferred against her in accordance with the procedures specified in the Collective Bargaining Agreement between OCA and plaintiff's union. Her em-

ployment was terminated following a hearing at which plaintiff was represented by counsel. She had ample opportunity both to confront the massive evidence that was introduced against her and to put her own side of the story into the record.

At the hearing, plaintiff excused her conduct on the ground that she had been suffering from depression. At her deposition in this action, plaintiff testified that she did not reveal her condition to anyone at OCA until after disciplinary charges were filed against her, when the attorney she retained to defend her at the hearing began requesting an "accommodation" on her behalf. The "accommodation" plaintiff belatedly sought was not an adjustment in the workplace to make it possible for plaintiff to perform her job. Rather, plaintiff wanted to be "accommodated" by receiving a penalty less severe than termination for the serious transgressions she had already committed.

■ On those undisputed facts, plaintiff fails as a matter of law to make out any claim for disability discrimination under the Americans with Disabilities Act or the New York State Human Rights Law. Plaintiff's attempt to save her claim by insisting that her supervisor did know about her medical condition fails because it contradicts her prior deposition testimony; in this Circuit, an affidavit cannot be used to create a genuine issue of fact if it contradicts prior sworn testimony. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 619 (2d Cir.1996).

Plaintiff appends to her ADA claim allegations of sexual harassment and disparate treatment due to her race (Hispanic) and gender. The sexual harassment claim is both time-barred and subject to an unassailable *Farragher–Ellereth* defense; and the race and gender discrimination claims are unexhausted and unsupported by any evidentiary showing.

OCA's motion is granted and the complaint is dismissed with prejudice.

## STATEMENT OF FACTS

OCA filed with its motion a Statement of Undisputed Facts in conformity with Local Rule 56.1 of the Rules of the Southern District of New York. Plaintiff, who is proceeding pro se, did not file an appropriate Local 56.1 response. The following facts are deemed admitted.

### The Unified Court System and Non–Judicial Personnel

The Unified Court System of the State of New York is the Judicial Branch of New York State Government established pursuant to Article VI of the New York State Constitution.

The Office of Court Administration is the administrative office for the Unified Court System. N.Y. Judiciary Law § 212(1)(b).

The chief judicial officer of the Unified Court System is the Chief Judge of the Court of Appeals. The Chief Judge, with the approval of the Administrative Board of the Courts, appoints a Chief Administrative Judge, who supervises the administration and the operation of the Unified Court System consistent with the power and duties delegated to her by the Chief Judge and in accordance with standards and administrative policies promulgated under section 28 of Article VI of the New York State Constitution and the Judiciary Law. N.Y. Judiciary Law §§ 211–212.

Through a delegation from the Chief Judge, the Chief Administrative Judge is, among other things, authorized to appoint and remove, upon nomination or recommendation of the appropriate administrative judge, or other administrator, all non-judicial offices and employees, except the county clerks, commissioner of jurors,

town and village court employees, and personal assistants to judges and justices. N.Y. Comp.Codes R. & Regs. tit. 22, § 80.1(b)(3).

Through a delegation from the Chief Judge, the Deputy Chief Administrative Judge for Courts within New York City is, among other things, authorized to assist the Chief Judge and the Chief Administrative Judge in the supervision of the administration and operation of the Unified Court System and to supervise the day-to-day operations of the trial courts, county clerk's offices and commissioners of jurors and supervise the administrative actions of the administrative judges for the Supreme, Family, Civil and Criminal Courts in New York City. N.Y. Comp.Codes R. & Regs. tit. 22, §§ 80.2(9)(I), 81.1(a)-(b). The Deputy Chief Administrative Judge is authorized to discipline employees in New York City for misconduct and incompetence. N.Y. Comp.Codes R. & Regs. tit. 22, § 25.29; (Morales Aff. Ex. A at 47–52.)

The Bronx County Clerk is responsible for the on-site administration of the County Clerk's Office, its personnel and its operations. The Bronx County Clerk has the power to nominate his deputies and other employees assigned to the County Clerk's Office and must approve any request to discipline those employees before the request is forwarded to the Deputy Chief Administrative Judge for action. (Morales Aff. ¶ 4.)

The Kings County Supreme Court is a trial court of unlimited original jurisdiction and is comprised of both civil and criminal terms, each of which is under the administrative authority of an administrative judge assigned to that term. The Administrative Judge for the Criminal Term of the Supreme Court, who reports to the Deputy Chief Administrative Judge, is responsible for the on-site management of the Criminal Term of the Supreme Court

and, among other things, must approve any request by court managers or supervisors to discipline an employee assigned to the Criminal Term of the Supreme Court before that request is forwarded to the Deputy Chief Administrative Judge for action. (*Id.* ¶ 5.)

The New York City Criminal Court is under the administrative authority of an administrative judge specifically assigned to it. The Administrative Judge for the New York City Criminal Court, who reports to the Deputy Chief Administrative Judge, is responsible for the on-site management of that Court and, among other things, must approve any request by court managers or supervisors to discipline an employee assigned to the Criminal Court before that request is forwarded to the Deputy Chief Administrative Judge for action. (*Id.* ¶ 6.)

*Plaintiff Milagros Canales–Jacobs*

Plaintiff was employed by the Unified Court System from 1981 through 2006. (*Id.* ¶¶ 7–9.)

In 2002, plaintiff was appointed to the Senior Court Clerk title and was assigned to the Bronx County Clerk's Office. (*Id.* ¶ 9.)

The Senior Court Clerk (JG–21) title, which is in the competitive jurisdictional class, serves either in a court's clerical offices or its courtrooms and can be designated to act in the absence of a Chief Clerk or Commissioner of Jurors. When assigned to a clerical office, a Senior Court Clerk is responsible for supervising Court Assistants and other court personnel in the processing of prisoner correspondence, reviewing calendaring decisions, motions for sufficiency and preference, and orders for conformance with decisions. When assigned to a courtroom, a Senior Court Clerk swears witnesses, polls jurors, and prepares courtroom minutes. This title is

allocated to the JG–21 salary grade. (*Id.* ¶ 9; Morales Aff. Ex. B.)

Senior Court Clerks in the First and Second Judicial Departments are peace officers. N.Y.Crim. Proc. Law § 2.10(21).

As peace officers, Senior Court Clerks are authorized to carry firearms, and have the power to make warrantless arrests; to use physical and deadly physical force in making an arrest or preventing an escape; to carry out warrantless searches; to issue appearance tickets, when acting pursuant to a special duty; and to possess and take into custody a firearm not owned by the peace officer for the purpose of disposing or guarding the firearm. N.Y. Penal Law § 265.20(1)(c); N.Y.Crim. Proc. Law § 2.20(1).

In April 2006, plaintiff was transferred from the Bronx County Clerk's Office to the Red Hook Community Justice Center, subject to the successful completion of probation. (Morales Aff. ¶ 10.)

In June 2006, plaintiff's probationary appointment to the Red Hook Community Justice Center was terminated and she was returned to the Bronx County Clerk's Office. (*Id.* ¶ 11.)

Upon the termination of her appointment to the Red Hook Community Justice Center, plaintiff did not report to work at the Bronx County Clerk's Office. Instead, in connection with a disciplinary proceeding that it had commenced against her, the Unified Court System suspended plaintiff's employment from June 2006 through November 2006. (*Id.* ¶ 12.)

*Plaintiff's Collective Bargaining Agreement*

Article 23 of the collective bargaining agreement between the State of New York and the New York State Court Clerks Association provides that a court employee holding a position by permanent appointment in the competitive class of the classified service "shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section." (Morales Aff. Ex. A at 47.)

Under Article 23 of the collective bargaining agreement, the disciplinary procedure is as follows:

a. The employee against whom disciplinary action is to be taken must be served with written charges of misconduct and incompetency.

b. An evidentiary hearing of the charges must be held by a hearing officer appointed by the Deputy Chief Administrative Judge.

c. Pending the hearing and determination of the charges of incompetency or misconduct, the employee against whom disciplinary action has been taken may be suspended without pay for up to 30 days.

d. At the hearing, the Unified Court System bears the burden of proving misconduct or incompetence. The employee charged with misconduct and incompetence is present at the hearing and may be represented by counsel or by a representative of the union. The employee or the employee's counsel may cross-examine any witness called by the Unified Court System and may call additional witnesses to appear and give testimony and may introduce documentary evidence. Compliance with technical rules of evidence is not required. At the close of hearing, the hearing officer issues a report stating whether the evidentiary record sustains the charges, and, if so, recommending a penalty.

e. Where the employee is found guilty of the charge, the hearing officer may recommend a penalty of: a repri-

mand; a fine up to $200; a suspension without pay for a period up to three months; denial of overtime opportunities; probation up to two years; demotion; dismissal from the service; or a combination of a fine up to $200 and a suspension up to three months; or a combination of probation up to two years and other penalty.

f. The employee against whom disciplinary action is to be taken is entitled to a copy of the hearing officer's report and recommendation and has three days to submit written comments concerning the report and recommendation to the Deputy Chief Administrative Judge.

g. The Deputy Chief Administrative Judge reviews the hearing record and has discretion to accept or reject the hearing officer's evidentiary findings as well as the hearing officer's penalty recommendation. The Deputy Chief Administrative Judge issues a directive stating whether he or she accepts the report and recommendation and the penalty to be imposed upon the employee.

h. The employee may appeal the disciplinary penalty by taking an appeal to the Chief Administrative Judge or by commencing an Article 78 proceeding in state court, but not both. Where an appeal is made to the Chief of Administrative Judge, the decision of the Chief Administrative Judge is deemed final and conclusive.

(Morales Aff. ¶ 14; Morales Aff. Ex. A.)

*Termination of plaintiff's employment*

As an employee holding a permanent appointment to the Senior Court Clerk title, disciplinary action taken against plaintiff was governed by Article 23 of the Collective Bargaining Agreement. (Morales Aff. ¶ 15.)

Plaintiff was served with disciplinary charges dated February 9, 2006, which alleged that on November 4, 2005, Canales–Jacob was insubordinate to Hector Diaz, the Bronx County Clerk. The charge alleged that, in response to his request that plaintiff move from her work station at the Bronx County Clerk's Office to permit a telephone repairman to repair a phone, plaintiff, in the presence of attorneys, staff, and members of the general public, screamed profanities at Mr. Diaz, called him a "motherf...r," said "I am not going to lick your balls like everybody else around here," and threw her pen at him. (Morales Aff. Ex. C.)

Plaintiff was served with additional disciplinary charges dated June 23, 2006, which alleged that plaintiff reported late to work at the Bronx County Clerk's Office on 59 occasions between January 10, 2005 and April 3, 2006. (Morales Aff. Ex. D.)

Plaintiff was served with additional disciplinary charges dated July 13, 2006. This third set of charges alleged 11 acts of *misconduct and incompetence* after she was transferred from the Bronx County Clerk's Office to the Red Hook Community Justice Center. Specifically, the charges allege that, in May 2006, plaintiff was rude and disrespectful to the Honorable Bruce Scheckowitz, a Judge of the Kings County Housing Court; she ignored Judge Scheckowitz's request for an application for an order to show cause filed by a litigant in a case that he was presiding over, failed to respond to Judge Scheckowitz's questions concerning the order to show cause, and eventually became confrontational with the judge. The charges also allege that, in May 2006, in the presence of other court employees and members of the public at the Red Hook Community Justice Center, plaintiff was rude and disrespectful to another court employee, Pearline Williams. After Ms. Williams

removed a number of case jackets from plaintiff's desk, plaintiff became upset, picked up a stack of case files from her desk and slammed them down on Ms. Williams' desk, repeated this act with another stack of case files, and then began singing and dancing. The charges allege that plaintiff failed to properly docket nine cases on the calendar of criminal proceedings of the Red Hook Community Justice Center, although this allegation was subsequently withdrawn. (Morales Aff. Ex. E; Morales Aff. ¶ 18 note 4.)

Judicial Hearing Officer Herbert J. Adlerberg was appointed by Deputy Chief Administrative Judge Joan B. Carey to hear the disciplinary charges and make a report of such hearing and recommend a penalty, if warranted. (Morales Aff. ¶ 19.)

An evidentiary hearing of the charges was held on October 5 and 12, 2006, before Judicial Hearing Officer Herbert J. Adlerberg. (*Id.* ¶ 23.)

Plaintiff appeared at the hearing and was represented by counsel, Martin Druyan. (*Id.* ¶ 24.)

At the hearing, the Unified Court System called six witnesses to testify in support of the charges. They were Hector Diaz, the Bronx County Clerk; Fausto Carrion, plaintiff's supervisor at the Bronx County Clerk's Office; the Honorable Bruce Scheckowitz, a Judge of the Kings County Housing Court; Sandra Martin–Smith, plaintiff's supervisor at the Red Hook Community Justice Court; and Pearline Williams and Jennifer Gregg, both co-workers assigned to the Red Hook Community Justice Center. The Unified Court System also introduced 17 exhibits into evidence. (*Id.* ¶ 25; Morales Aff. Ex. K.)

At the hearing plaintiff testified on her own behalf, but did not call any other witnesses to testify. She introduced three exhibits into evidence. (Morales Aff. ¶ 26; Morales Aff. Ex. L.)

During the hearing, among other things, plaintiff testified that she had been diagnosed in or about in 2005 with depression by her pain management physician, that this physician prescribed anti-depression medication to her, and that she did not seek psychiatric treatment of her condition until June 2006. (Morales Aff. Ex. J at 19–24, 30–32, 39–40.)

In his summation at the close of plaintiff's case on October 12, 2006, plaintiff's attorney, among other things, requested that the Unified Court System accommodate plaintiff's psychiatric condition by imposing a disciplinary penalty other than termination. (*Id.* at 45–46, 49, 51–53.) A prior request for this "accommodation" had been made previously by counsel. Plaintiff identifies the earliest such request as having been made by counsel on September 9, 2006, which is well after the third set of charges were filed against her. (Pl.'s Ex. 21.)

On November 9, 2006, Judicial Hearing Officer Adlerberg issued a report and recommendation wherein he sustained all of the charges and recommended that plaintiff be terminated. JHO Adlerberg expressly rejected plaintiff's claim that she was entitled to an accommodation due to her psychiatric condition, stating "that any or all of the conduct which is the subject of this disciplinary proceeding may have been caused by a psychological condition afflicting respondent—namely her depression-does not render her immune to being disciplined for her conduct." (Morales Aff. Ex. O at 8–10.)

By letter dated November 16, 2006, plaintiff's attorney submitted his written comments to the report and recommendation to Judge Carey. (Morales Aff. Ex. P.)

On November 21, 2006, Judge Carey issued a directive wherein she concurred with Hearing Officer Adlerberg's findings and recommendations and ordered that plaintiff be terminated from her position, effective immediately. (Morales Aff. Ex. Q.)

On January 11, 2007, plaintiff appealed from Judge Carey's directive to the Chief Administrative Judge. (Morales Aff. ¶ 33; Morales Aff. Ex. R.)

Plaintiff was represented on the appeal by a new attorney, David McGruder. (Morales Aff. ¶ 34.)

On appeal, in addition to arguing that the decision to terminate her should be reversed because the evidentiary record did not support the determination of incompetence and misconduct, plaintiff's attorney argued that plaintiff's depression was a mitigating factor on the issue of penalty and that, in light thereof, the Deputy Chief Administrative Judge should have imposed a penalty "short of termination." (Morales Aff. Ex. S at 377–378.)

On April 12, 2007, after reviewing plaintiff's appeal of Judge Carey's directive, including the evidentiary record of the disciplinary proceeding, the Chief Administrative Judge issued a decision wherein he "concluded that Judge Carey's finding of misconduct and imposing a penalty of termination is correct and should not be disturbed." (Morales Aff. Ex. T.)

*Plaintiff's Claim of Discriminatory Treatment*

### Claim of Failure to Accommodate

Plaintiff states that, in 2003, a pain specialist who was treating plaintiff for a back condition diagnosed plaintiff with, and began prescribing to plaintiff, medication for depression. (Morales Aff. Ex. U at 129–131, 135–136, 142.)

Plaintiff testified at her deposition that she never disclosed to anyone at the Unified Court System that she had depression or any other psychiatric condition until the summer of 2006:

Q. Did you ever tell anybody at Unified Court System that you had depression?

A. No. . . .

\* \* \* \* \* \* \*

Q. So the Court System doesn't have a record of your disability as to your psychological condition?

A. No.

Q. Did you ever ask for an accommodation from the Unified Court System because of your psychological condition?

A. No, not till after the summer and I realized that I had a psychological condition.

Q. Summer 2006?

A. Yes

Q. How was that request made?

A. It was made in writing and it was put on the record by the attorney at the time, Martine Druyah, D–R–U–Y–A–N.

Q. This is in connection with the disciplinary hearing, correct, with the proceeding concerning your disciplinary hearing?

A. Right.

(Morales Aff. Ex. U at 166–170.)

The only time that plaintiff requested an accommodation of her depression was during the disciplinary proceeding, although that request was made multiple times.

The first request was by letter dated September 8, 2006, addressed to Pedro Morales, Esq., an attorney at OCA. (Pl.'s Ex. 21.) The second request came in a letter dated October 4, 2006, addressed to the Deputy Chief Administrative Judge, wherein plaintiff's attorney requested an accommodation for plaintiff's psychological

condition and specifically proposed that the accommodation "be non termination on the pending disciplinary charges which involve her actions prior to medicine (Zoloft, etc.) that she is now taking and talk therapy." (Morales Aff. Ex. N.) A third request was made on October 12, 2006, when plaintiff's attorney requested the accommodation during his summation at the close of the hearing. (Morales Aff. Ex. J at 45–46, 49, 51–53.) A fourth and final request was by letter dated November 16, 2006, addressed to the Deputy Chief Administrative Judge, in which plaintiff's attorney asked that the Unified Court System accommodate plaintiff's psychiatric condition by imposing a disciplinary penalty other than termination so as to allow her to keep her job and improve her work performance. (Morales Aff. Ex. P.)

Plaintiff does not know whether the Unified Court System regards her as disabled. (Morales Aff. Ex. U at 167.)

*Sexual Harassment*

Plaintiff identified four instances of sexual harassment by her supervisor at the Bronx County Clerk's Office, Fausto Carrion:

Beginning in or about December 2002, Carrion allegedly told plaintiff that she had a nice shape for a woman her age, she looked good in the clothing that she wore, and that her clothes made her boobs look good. (Morales Aff. Ex. V at 52–53.)

Beginning on or about December 2002, Carrion allegedly told plaintiff that he liked the pink lipstick that she wore and that it made it her lips look luscious, edible and beautiful. (*Id.* at 60–61.)

In or about 2003, Carrion allegedly told plaintiff that he wanted to take plaintiff home with him. (*Id.* at 65, 81–83.)

In 2005, when plaintiff questioned how money being collected by employees at the Bronx County Clerk's Office to purchase a

gift for a sick co-worker was going to be spent, Carrion told plaintiff that she "should take the $5 and stick it up [her] ass." This comment was brought to the attention of the administrator of the Clerk's Office, who admonished both plaintiff and Carrion for childish behavior. Carrion then threw a $5 bill at plaintiff. (*Id.* at 69–72.)

With respect to the first two sets of comments, Carrion repeated these comments once or twice a week until September 2005. (*Id.* at 58, 62.)

Plaintiff testified that she did not feel intimidated or humiliated by these comments and she never asked Carrion to stop making them. Nor did she report them to anyone in authority at OCA. (*Id.* at 56–57, 64–67, 84–87.)

Plaintiff testified that Carrion was not seeking sex in return for a job advantage. (*Id.* at 58, 66, 84.)

The Unified Court System has established a written policy and procedure to prevent and eliminate sexual harassment. (Morales Aff. ¶ 50; Morales Aff. Ex. AD.) OCA trains current and new employees about its policy and procedure for dealing with instances of alleged sexual harassment, including identifying conduct that constitutes sexual harassment, encouraging employees to address sexual harassment sooner than later, and explaining the options available to an employee for addressing sexual harassment. (Morales Aff. ¶ 51.)

An employee of the Unified Court System who is confronted with sexual harassment may address it in one of four ways:

a. First, an employee may, but is not required to, confront the harasser and inform the harasser that the behavior is unwelcome and that the employee wants the conduct to stop.

b. Second an employee may discuss the problem with any supervisor or manager of the Unified Court System, all of whom are under an affirmative obligation to address a claim of harassment whenever and however they learn of it. The actions that a supervisor or manager may take include reporting the claim of sexual harassment for action by a senior manager and if authorized to do so, separate the employee from the harasser.

c. Third, an employee may call a member of the Unified Court System's Anti–Discrimination Panel, which have been established at every court facility for the purpose of providing employees with an informal alternative to filing a formal written complaint. Panel members are fellow employees who are available to meet with an employee and provide support, information and options, including serving as an intermediary between the employee and the harasser.

d. Fourth, an employee can make a formal written complaint asking the Unified Court System to investigate a claim of sexual harassment. The investigation is conducted by the Office of the Special Inspector General for Bias Complaints and entails interviewing the complaining employee, the harasser and other witnesses. Upon the completion of the investigation, the Special Inspector General for Bias Complaints issues a report which is sent to the appropriate administrator and then to the Deputy Chief Administrator who decides if disciplinary action against the harasser is warranted.

(*Id.* ¶ 52.)

These options are also available for claims of discrimination in the workplace based on race, gender, religion, age and disability. (*Id.* ¶ 53.)

Plaintiff testified that she was aware of, and received training in, the Unified Court System's Anti–Harassment Policy. (Morales Aff. Ex. V at 41–48.) However, plaintiff never complained to anyone or otherwise took advantage of the policy. (*Id.* at 86–87.)

*Disparate Treatment Based on Race and Gender*

Plaintiff claims that she, a Hispanic woman, was treated differently than other employees who were disciplined on the basis of her race and her gender. She identifies two black male court employees, Wayne Powell and Arthur Swint, and claims they are similarly situated to her but were treated differently with respect to employee discipline. (Morales Aff. Ex. W at 89–90, 92–93, 101–102, 115.)

Senior Court Officer Wayne Powell is a black male who was hired by the Unified Court System in 1986. (Morales Aff. ¶ 42.)

In 1990, Wayne Powell was appointed to the title of Senior Court Officer, and assigned to the Kings County Supreme Court, but was displaced from that title in 1991 due to a reduction in force made necessary by a fiscal crisis. In 1991, he was restored to the title of Senior Court Officer and has remained in that title until the present. (*Id.* ¶ 43.)

Persons in the Senior Court Officers job title are responsible for maintaining order and decorum and for providing security in all courts in New York City. Senior Court Officers escort judges, jurors and witnesses to and from courtrooms; guard misdemeanants and felons in courtrooms and escort them to and from holding pens; maintain order and control in emergencies, including hostage situations, riots, fires, power failures, and bomb scares; subdue unruly and disruptive prisoners and spectators; administer first aid; and guard and make all necessary arrangements for sequestered and nonsequestered juries.

Court Officers also perform such court clerical duties as seating and polling jurors; responding to inquiries from attorneys, jurors and spectators; maintaining minute books, docket books, index books, case files, court calendars, and daily, weekly, and monthly statistical reports; and marking, handling, and safeguarding evidence. As peace officers, Court Officers are empowered, on-or-off duty, to make warrantless arrests, to use deadly physical force in making an arrest or preventing an escape, to carry out warrantless searches, and to purchase and possess firearms without formally obtaining a firearms license. This title is allocated to the JG–18 salary grade. (Morales Aff. Ex. Y.)

In October 2006, Powell was served with charges of misconduct and incompetency for acts committed between May 2005 and October 2006 while assigned to the Criminal Term of the Kings County Supreme Court. Specifically, the charges allege that Powell reported late to work on 24 occasions, was absent from work on 22 occasions, failed to swipe his time card on a time-keeping device on seven occasions, failed to follow proper procedures during a fire drill, failed to notify a supervisor that he was available for reassignment, failed to report to his assigned post, failed to leave court premises after receiving authorization from his supervisor to leave work early, and violated rules concerning smoking on duty.

These charges were never tried. Instead, Powell entered into a stipulation of settlement, pursuant to which, effective May 23, 2007, he was placed on probation for two years. (Morales Aff. Ex. AA.)

Senior Court Clerk Arthur Swint has been employed by the Unified Court System from 1987 to the present and has been assigned during that entire period to the New York City Criminal Court. (Morales Aff. ¶ 47.)

1. In 2000, Arthur Swint was appointed to the Senior Court Clerk title. (*Id.* ¶ 47.)

2. In his 21 years of employment with the Unified Court System, Swint has never been charged with misconduct or incompetence. (*Id.* ¶ 48.)

3. For the period of January 2005 through June 2006—the period covered by the charges of misconduct and incompetency against plaintiff—Arthur Swint was assigned to the Manhattan branch of the Criminal Court and he received two performance evaluations prepared by two different supervisors, both of which state that he satisfied his job requirements. (*Id.* ¶ 49; Morales Aff. Ex. AB, AC.)

Plaintiff also claims that, upon her arrival at the Red Hook Community Justice Center, she was discriminated against when she was not provided with a permanent work station. (Morales Aff. Ex. X at 117–121.) Plaintiff contends that this occurred because she was the only Hispanic person working in the Clerk's Office. (*Id.* at 117.) However, plaintiff testified at her deposition that while she did not have a permanent workstation at the time she arrived at the Clerk's Office of the Red Hook Community Justice Center, she received a workstation when the court employee who was assigned to train her completed the training and transferred out of the Clerk's Office. (*Id.* at 121–122.)

*Administrative Exhaustion*

On April 19, 2007, plaintiff filed an administrative complaint with both the New York State Division of Human Rights ("SDHR") and the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging that the Office of Court Administration and Fausto Carrion had discriminated against her based on disability, age, race/color, and sex when she was disciplined for the on-the-job misconduct and incompetence and when Fausto Carrion

did the following: "[he] told me to shove $5.00 up my a _____"; made "constant comments of how my lips were always so juicy"; and "commented that his wife was staying in the city and I should go home with him." (Morales Aff. Ex. AE.) The charge mentioned that OCA had refused a requested disability accommodation. It did not allege that she was discriminated against when she arrived at the Red Hook Community Justice Center, or that she was treated differently than other employees when she was disciplined and they were not (or were not similarly disciplined). (*Id.*)

By Determination and Order dated September 26, 2007, the SDHR found that there was no probable cause to believe that the respondents had engaged in unlawful discriminatory practice. (Morales Aff. Ex. AF.)

On December 4, 2007, the EEOC issued a right-to-sue letter, informing plaintiff that the "EEOC has adopted the findings" of the SDHR and was, therefore, closing its file on plaintiff's complaint. (Morales Aff. Ex. AG.)

## CONCLUSIONS OF LAW

Plaintiff asserts causes of action under the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12117 ("ADA"), the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 ("ADEA"), the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17 ("Title VII"), the New York State Human Rights Law, Executive Law §§ 290–297 ("NYSHRL"), and New York City Human Rights Law, N.Y.C. Administrative Code §§ 8–101–103 ("NYCHRL").

OCA argues that this Court does not have subject matter jurisdiction over plaintiff's claims for relief under the ADA, ADEA, NYSHRL and NYCHRL, because these claims are barred by the Eleventh Amendment. Defendant Office of Court Administration also alleges that plaintiff's claim of sexual harassment is barred by the statute of limitations and that plaintiff fails to raise any genuine issue of fact that would bar dismissal of her claims under the ADA, Title VII or Section 1981.

Because OCA is correct on every count, its motion for summary judgment dismissing the complaint is granted.

### Standards for Summary Judgment

A motion for summary judgment must be granted where, as here, "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To defeat a motion for summary judgment, the plaintiff must establish the existence of an issue of fact that is both "genuine" and "material." *W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990). She must do this by introducing evidence that creates, at a minimum, a genuine issue of material fact that warrants a trial by jury.

■ Given her pro se status, plaintiff's papers in opposition to the motion are being read liberally. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). However, that does not excuse plaintiff from pointing to evidence (not simply conclusory assertions) that creates a triable issue of fact on her claims. Nor does it permit the court to ignore the Second Circuit's directive that a party may not use a subsequently-drafted affidavit to contradict her sworn testimony at deposition. *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996).

## I. The Court Lacks Subject Matter Jurisdiction to Adjudicate Plaintiffs Claims Under the ADA, ADEA, NYSHRL, OR NYCHRL

█ Defendant Office of Court Administration is the administrative arm of the New York State Unified Court System, which constitutes the Judicial Branch of New York state government. *See* N.Y. Const. art. 6, §§ 1, 13; N.Y. Const. art. 13 § 13. The Eleventh Amendment of the United States Constitution bars "federal jurisdiction over suits against nonconsenting States." *Kimel v. Fla. Bd. of Regents,* 528 U.S. 62, 73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); *Qader v. New York,* 396 F.Supp.2d 466, 470 (S.D.N.Y.2005). Because the Office of Court Administration has not waived its immunity under the Eleventh Amendment or consented to being sued in federal court for any alleged violation of the ADA, ADEA, NYSHRL or NYCHRL, plaintiff is barred from asserting these claims against this defendant— the only defendant she has sued.

### A. Plaintiff is precluded from asserting any claim for relief under Title I of the ADA

█ The Eleventh Amendment prohibits plaintiff from bringing in federal court any claim for money damages due to employment discrimination barred by Title I of the ADA, 42 U.S.C. §§ 12201–12213. The United States Supreme Court has concluded that Title I of the ADA does not constitute a valid exercise of Congress' authority under section 5 of the Fourteenth Amendment sufficient to abrogate the state's Eleventh Amendment sovereign immunity. *See Bd. of Trs. of the Univ. of*

*Ala. v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001).

It cannot be disputed that defendant Office of Court Administration is an agency of the Unified Court System. *See Posr v. Ct. Off. Shield # 207,* 180 F.3d 409, 414 (2d Cir.1999); *Volin v. N.Y. State Ct. Admin.,* 91 Civ. 7185, 1992 WL 123174, at *2 (S.D.N.Y. May 27, 1992). The State has not waived immunity or consented to being sued in federal court. Title I does not abrogate the sovereign immunity enjoyed by the State of New York or its agencies and officials. *Garrett,* 531 U.S. at 363, 121 S.Ct. 955. Plaintiff's claim arises under Title I of the ADA, not Title II. Accordingly, plaintiff's ADA claims seeking retroactive and prospective relief against the Office of Court Administration must be and are dismissed for lack of subject matter jurisdiction. *See Ex parte Young,* 209 U.S. 123, 160, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 102–103, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

### B. Plaintiff is precluded from asserting any claim for relief under the ADEA [1]

█ The Eleventh Amendment also bars all claims asserted under the ADEA, 29 U.S.C. §§ 621–634, which prohibits discrimination based on age, from being asserted in federal court against a state, its agencies and any state officers acting in their official capacities. *See Kimel,* 528 U.S. at 73, 120 S.Ct. 631; *McGinty v. New York,* 251 F.3d 84 (2d Cir.2001). Again, because OCA is an agency of the Unified Court System and an arm of the State and the State has not waived immunity or consented to be sued in federal court, plain-

---

**1.** Although plaintiff does not allege in her complaint any facts that support a claim under the ADEA, she does state on the first page of her complaint that "[t]his action is brought for discrimination in employment pursuant to the Age Discrimination in Employment Act of 1967."

tiff's ADEA claims must also be dismissed. *See Posr,* 180 F.3d at 414; *Volin,* 1992 WL 123174, at *2.

C. Plaintiff is precluded from asserting any claim for relief under the NYSHRL and NYCHRL

 The Eleventh Amendment bars suits, regardless of the relief sought, alleging violations of state law against the State of New York, its agencies and agents, unless the state has consented to being sued in a federal forum. *See Pennhurst,* 465 U.S. at 100–01, 104 S.Ct. 900. This bars plaintiff's claims under the NYSHRL and the NYCHRL from being heard in this court.

## II. Plaintiff Fails to Raise a Genuine Issue of Fact On Any of Her Remaining Claims

A. Plaintiff Fails to Raise an Issue Concerning Her Disability

The court is not quite sure why defendant OCA has devoted so much of its brief to a discussion of plaintiff's allegation that OCA wrongfully refused her request for a reasonable accommodation under the ADA. OCA has correctly pointed out that federal courts are not open to plaintiffs who sue states for damages under Title I of the ADA. However, since OCA discusses the matter at such length, this Court will rule, in the alternative, that if plaintiff could sue in federal court, she would not be entitled to prevail.

 The ADA prohibits a covered employer from discriminating against an otherwise qualified employee by failing to make a reasonable accommodation to the known physical or mental limitations of the employee, unless the accommodation would impose an undue hardship on the employer's business. *See* 42 U.S.C. § 12112(a), (b)(5)(A); *Stone v. City of*

*Mount Vernon,* 118 F.3d 92, 96 (2d Cir. 1997). In order to establish a prima facie case that she was entitled to a reasonable accommodation, plaintiff must show that (1) she is an individual who has a disability within the meaning of the statute, (2) that the employer is covered by the statute and had notice of the disability, (3) that with reasonable accommodation she could perform the essential functions of the position, and (4) that the employer has refused to make such an accommodation. *Stone,* 118 F.3d at 96–97. Here, plaintiff fails to make out a prima facie case that she is entitled to a accommodation, both because defendant had no notice of her condition and because her requested "accommodation" is unreasonable on its face.

1. Plaintiff did not provide her employer with notice of her condition.

 When seeking an accommodation of her condition, the employee must apprise her employer of her condition before the employer takes the job action which the employee is challenging. *See Woolley v. Broadview Networks, Inc.,* 01 Civ. 2526, 2003 WL 554754, at *3 (S.D.N.Y. Feb. 26, 2003) (plaintiff made request for accommodation after his supervisor requested his termination but before the termination was approved); *Scott v. Mem'l Sloan–Kettering Cancer Ctr.,* 190 F.Supp.2d 590, 595–96 (S.D.N.Y.2002) (plaintiff made request for accommodation after employer sent letter informing her that she was terminated but before she received it); *Whalley v. Reliance Group Holdings, Inc.,* 97 Civ. 4018, 2001 WL 55726, at *9–10 (S.D.N.Y. Jan. 22, 2001) (plaintiff made request for accommodation after he was informed of his employer's decision that he was being terminated but before it was finalized pursuant to a severance agreement); *Kolivas v. Credit Agricole,* 95 Civ. 5662, 1996 WL 684167, at *4 (S.D.N.Y. Nov. 26, 1996) *aff'd* 125 F.3d 844

(2d Cir.1997) (stating that the fact that supervisor, prior to learning that employee had depression, had already begun process to fire the employee established that there was no causal connection between the decision to terminate and knowledge of any alleged disability).

Although plaintiff apparently had been diagnosed with, and treated for, depression in 2003, she did not inform her employer of her condition until 2006, and then only on the eve of a hearing in a disciplinary proceeding seeking her termination for misconduct and incompetence. Plaintiff herself admits that the first notice her employer received about her need for an accommodation was a letter from her attorney two months after the third and last set of disciplinary charges were filed against her; she testified under oath that she never brought the matter to OCA's attention prior to that time. Therefore, the employer here did not have notice of plaintiff's condition, so there could be no causal connection between her psychiatric condition and the decision to bring her up on charges leading to her termination.

### 2. Plaintiff's accommodation request is unreasonable.

 A reasonable accommodation does not mean the elimination of any of the position's essential functions. *See Gilbert v. Frank*, 949 F.2d 637, 642 (2d Cir.1991). Although reasonableness is normally a question of fact, *see Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995), summary judgment may be granted where the proposed accommodation would eliminate an essential function of the job. *Gilbert*, 949 F.2d at 642. Here, the accommodation that plaintiff seeks, namely that she receive a penalty other than the termination, (*see* Morales Aff. Ex. L at 45–46, 49, 51–53; Ex. P and Q), is nothing more than a request that her employer accept and excuse her misconduct and poor work

performance. Such a request is unreasonable as a matter of law, because on-the-job misconduct and poor work performance always constitute legitimate and nondiscriminatory reasons for terminating employment, even where the misconduct is caused by an undivulged psychiatric condition. The ADA does not excuse workplace misconduct because the misconduct is related to a disability. *Raytheon v. Hernandez*, 540 U.S. 44, 54 n. 6, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003); *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357 (6th Cir.2007)(plaintiff, who suffered from post-concussive syndrome, threatened a group of students and made inappropriate comments about them and their families); *Davila v. Qwest Corp.*, 113 Fed.Appx. 849 (10th Cir.2004) (plaintiff, who had bipolar affective disorder, engaged in workplace violence); *Newberry v. E. Tex. State Univ.*, 161 F.3d 276 (5th Cir.1998) (plaintiff, who had compulsive obsessive disorder, threatened legal action against chairman of university department and failed to perform certain duties); *Glowacki v. Buffalo Gen. Hosp.*, 2 F.Supp.2d 346, 353–354 (W.D.N.Y.1998) (plaintiff, who had bipolar affective disorder, physically assaulted a coworker).

Courts have, in fact, rejected the notion that a requested accommodation that simply excused misconduct and poor work performance can be "reasonable." *See Whalley*, 2001 WL 55726, at *10 (holding that plaintiff's belated request for an accommodation after being informed of his employer's decision that he was being terminated amounted to a request for a second chance); *Aquinas v. Fed. Express Corp.*, 940 F.Supp. 73, 80 (S.D.N.Y.1996) (holding that an accommodation that amounts to an open-ended commitment to permit the employee to work whenever able is not reasonable); *see also Davila*,

113 Fed.Appx. at 853–54 (10th Cir.2004) (citing cases).

### B. Plaintiff Fails to Raise A Genuine Issue Concerning Her Claim of Sexual Harassment

 OCA does not enjoy Eleventh Amendment immunity for claims of racial or gender discrimination, either under Title VII, or under 42 U.S.C. § 1981 (for race discrimination). Such claims may be brought against a state agency like OCA in a federal court.

 Plaintiff contends that she was sexually harassed in the workplace by her supervisor, Fausto Carrion. The harassment took the form of repeated sexually-tinged comments that were made from sometime in 2002 until September 2005.

But plaintiff admits that the comments stopped in September 2005. Yet she did not file a charge of discrimination with any administrative agency until April 2007—more than 300 days after the last of the offensive comments was made. Therefore, her claim is time-barred.

New York is a so-called "deferral state." Under 42 U.S.C. § 2000e–5(e)(1), plaintiff has 300 days from the act complained of to file an administrative charge with the state deferral agency of the EEOC. *See* 42 U.S.C. § 2000e–5(e)(1); *Butts v. City of New York Dept. of Hous.,* 990 F.2d 1397, 1401 (2d Cir.1993); *Harris v. N.Y. Times,* 90 Civ. 5235, 1993 WL 42773 (S.D.N.Y. 1993). Because plaintiff filed her complaint with the State Division of Human Rights on April 19, 2007, (*see* Morales Aff. Ex. AE), under the 300–day rule, any alleged acts of discrimination that occurred prior to June 23, 2006, are not actionable.

Here, all of the statements that plaintiff claims constitute sexual harassment ceased well before June 23, 2006. Fausto Carrion's statements to plaintiff concerning plaintiff's body shape and her lips, which allegedly began approximately in December 2002, ceased, by plaintiff's own admission, in September 2005. (*See* Morales Aff. Ex. V at 76–78.) Carrion's statements that he wanted to take plaintiff home began, and ceased, in 2003. (*See id.* at 65, 81–83.) Finally, Carrion's single statement to plaintiff that she should stick a $5 bill up her rectum was made in 2005. (*See id.* at 69–72.) Accordingly, plaintiff's claim of sexual harassment must be dismissed.

 Plaintiff does not save her time-barred claim by asserting that the sexual harassment amounted to a continuing violation that created a hostile work environment. While hostile work environment is by its very nature a continuing violation, *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 116–17, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), at least one incident that contributes to the environment about which plaintiff complaints must have taken place within the 300 day limitations period. *Id.* As her testimony that the offensive statements ceased in September 2005 dooms her claim even under a continuing violation theory, plaintiff alleges that Carrion made a single statement in 2006, prior to her transfer to the Red Hook Community Justice Center, to the effect that she was wearing the same pink lipstick that she wore when she first started working at the Bronx County Clerk's Office. (*See* Morales Aff. Ex. V at 78.) She assigns this as a sexually-tinged comment because the lipstick was the source of the "juicy lips" statements. However, this incident necessarily occurred (if it occurred) prior to June 2006, because plaintiff was transferred to Red Hook in April 2006. Therefore, it does not save her sexual harassment claim from dismissal under the relevant statute of limitations.

 Furthermore, OCA cannot be held liable for Carrion's conduct even if it

took place just as plaintiff said. Where an employee alleges a hostile work environment created by a supervisor, the employer is not liable for that supervisor's conduct where the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior and the employee has unreasonably failed to take advantage of corrective or preventive avenues made available by the employer. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 806–807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). And where an employee asserts a claim of hostile work environment and fails to utilize an employer's sexual harassment policy, that employee's claim must be dismissed. *See Leopold v. Baccarat, Inc.*, 239 F.3d 243, 245–246 (2d Cir.2001); *Breeding v. Cendant Corp.*, 01 Civ. 11563, 2003 WL 1907971, at **6–8 (S.D.N.Y. Apr. 17, 2003). Here, plaintiff's claims of sexual harassment must be dismissed because the Office of Court Administration has a complete defense.

The undisputed evidence demonstrates that the Unified Court System has established and disseminated an anti-sexual harassment policy designed to prevent and correct all instances of harassment committed by its officers and employees. The policy provides a court employee with four options for addressing harassment: confront the harasser and request that the conduct cease; report the harassment to any manager or supervisor; confer with a member of the Anti–Discrimination Panel; or file a formal written complaint with the Office of the Special Inspector General for Bias Complaints. (*See* Morales Aff. ¶¶ 51–55; Morales Ex. AD.) Plaintiff, however, never availed herself of this policy. She never asked that Carrion cease making his comments to her and she never reported his offensive conduct to anyone. (*See*

Morales Aff. Ex. V at 56–67, 59, 64–67, 84, 86.) Thus, because the Unified Court System exercised reasonable care to address sexual harassment in the workplace and plaintiff unreasonably failed to utilize it, plaintiff's sexual harassment claim must be dismissed.

### C. Plaintiff Fails to Raise a Genuine Issue on Her Claims of Race and Gender Discrimination

Plaintiff testified at her deposition that she is also claiming discrimination based on her race and gender because (1) OCA terminated her but did not impose similarly serious discipline on two similarly situated black male employees, and (2) she was discriminatorily treated on the basis of her race (Hispanic) when she was temporarily transferred to the Red Hook Community Justice Center. (*See* Morales Aff. Ex. W, X.) These claims of race and gender discrimination must be dismissed for two reasons. First, except to the extent that plaintiff's complaint can be read as sounding in 42 U.S.C. § 1981 (which does not require administrative exhaustion), plaintiff failed to exhaust her administrative remedies with respect to them. Second, assuming those claims could be adjudicated by this Court, plaintiff has failed to offer evidence that creates a triable issue of fact on either charge.

#### 1. Plaintiff has failed to exhaust her administrative remedies under Title VII.

 As a precondition to filing a Title VII suit in federal court charging gender and race discrimination, plaintiff must first exhaust her available administrative remedies by timely filing a complaint with the EEOC or other local administrative agency. *See Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir.2003); *Briones v. Runyon*, 101 F.3d 287, 289

(2d Cir.1996); *Butts*, 990 F.2d at 1401. Only claims explicitly raised before an administrative agency are properly before the court, unless the claims that were not previously raised are reasonably related to those preserved by filing with the administrative agency.

In *Butts*, the Second Circuit outlined three situations where a claim, not alleged before the administrative agency, might be reasonably related to allegations that were raised in the agency complaint. They are: (1) where the conduct complained of would fall within the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination;" (2) allegations of retaliation by the employer against the employee for filing a complaint before the EEOC; and (3) where plaintiff has alleged further incidents of discrimination carried out in exactly the same manner alleged in the complaint filed with the agency. *Butts*, 990 F.2d at 1402–03. In determining whether plaintiff's claims are reasonably related, the primary focus is "on the factual allegations made in the [division complaint] itself, describing the discriminatory conduct about which plaintiff is grieving." *Deravin, supra*, 335 F.3d at 201 (internal quotations omitted).

Here, nothing in plaintiff's SDHR charge would have alerted the agency that it should investigate the question of whether plaintiff was treated differently from other court employees on the grounds of race and gender in matters of discipline, or that it should take additional steps to see whether plaintiff was treated in a discriminatory manner at another location to which she was temporarily transferred. Plaintiff's claim that she was treated differently from Powell and Swint when she was terminated, as well as her claim that she was denied a workstation at the Red Hook Community Justice Center because she was Hispanic, are unrelated to her SDHR complaint, which charges a failure to accommodate her request for a lesser penalty than dismissal and sexual harassment by Carrion prior to her transfer to Red Hook. Indeed, nothing in the SDHR complaint mentioned racial or ethnic discrimination at all. *See Gilliard v. N.Y. Pub. Lib. Sys.*, 597 F.Supp. 1069 (S.D.N.Y. 1984) (dismissing complaint which contained allegations of general pattern of discrimination where the EEOC complaint was limited to claim of discriminatory discharge). And sexual harassment is a particular form of gender discrimination; it does not encompass any and all gender discrimination that may have taken place, and plaintiff's charge does not mention that she was treated differently than anyone else based on her gender.

For this reason, plaintiff's new claims of gender and race discrimination under Title VII and the SDHR must be dismissed.

Because plaintiff is proceeding pro se, and the Court is construing her pleadings liberally, her race-based claims could be cognizable under 42 U.S.C. § 1981, which prohibits discrimination in the making of contracts based on race. (Claims of gender discrimination are not subsumed under Section 1981, so plaintiff's sexual harassment claim cannot be brought under that statute). There are, however, two fatal flaws in the Section 1981 analysis as applied to the undisputed facts before this Court.

First, section 1981 claims cannot be maintained against a state agency unless the discrimination is a product of official policy. *Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). Plaintiff offers not a scintilla of evidence tending to show that OCA maintained any policy that countenanced discrimination on the basis of

race; all the evidence in the record is to the contrary.

Second, the evidence before the Court does not even remotely suggest that the plaintiff was discriminated against on the basis of her race.

 In analyzing a claim of racial or sexual discrimination under section 1981, courts apply the familiar burden-shifting analysis used for Title VII cases since *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), superceded by statute on other grounds, Civil Rights Act of 1991, Pub. L. No. 102–166, 105 Stat. 1074; *Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 68–69 (2d Cir.2000). Under the *McDonnell Douglas* framework, a plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). If plaintiff establishes a prima facie case, then the burden shifts to the employer to "articulate some legitimate nondiscriminatory reason" for the adverse action. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097. If the employer meets that burden, the plaintiff must point to evidence that would support a reasonable jury's finding that the employer's reason is mere pretext and that its actions were discriminatory. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817; *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097. In order to show the employer's reason is pretext for discrimination, plaintiff must show that it is both false and that the real reason for the job action at issue is discrimination. *See Saint Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

 To make a prima facie case of employment discrimination based on race, plaintiff must demonstrate she is (a) in a protected group (b) qualified for the position (c) was subject to an adverse employment action, and (d) that a similarly situated employee not in the relevant group received better treatment. *See McGuinness v. Lincoln Hall,* 263 F.3d 49 (2d Cir.2001); *Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60 (2d Cir.1997). For our purposes, the Court focuses on the fourth factor.

 The plaintiff must show that the supposedly similarly situated employee is in fact so similarly situated, and shares so many characteristics with the plaintiff, that it would be fair to infer that the difference in treatment may be attributable to discrimination. Put otherwise, the plaintiff and the comparator employee must be similarly situated "in all material respects" albeit not "in all respects." *McGuinness,* 263 F.3d at 54–55. The attributes of employment which may form the basis for comparison are whether the plaintiff and comparator are subject to the same supervisory authority, engaged in the same conduct, were held to the same standards and held comparable positions. *Id.*

Here, plaintiff has identified two court employees who are allegedly similarly situated to her—Arthur Swint and Wayne Powell. However, although he shares the same job title as plaintiff, Arthur Swint, a Senior Court Clerk, who is black (and male), is different from plaintiff in the most material of respects; in his 21 years as an OCA employee, Swint was never brought up on charges of misconduct, as plaintiff was. Swint also worked for different supervisors, at least at the time frame 2005–06 (although defendant is so precise about that the Court infers Swint did work in the Bronx County Clerk's

Office at some time during plaintiff's 25 years there).

Wayne Powell, who is also black (and male), was brought up on charges, as plaintiff was. However, he has a different job than plaintiff: he is a Senior Court Officer, with significantly different duties and responsibilities than a Senior Court Clerk. While both titles confer peace officer status, Senior Court Clerks do not provide security in court facilities, which is the principal occupation of Senior Court Officers. During the period January 2005 through June 2006, the period covered by the disciplinary charges filed against both Powell and plaintiff, Wayne Powell was assigned to the Criminal Term of the Kings County Supreme Court and so worked for a different administrator—specifically, the Administrative Judge for the Kings County Supreme Court, Criminal Term—than did plaintiff. (*See* Morales Aff. ¶¶ 46–48.) And while Powell, like plaintiff, was charged with misconduct and incompetence, Powell was never charged with cursing at a County Clerk or any Judge of the Supreme Court. He was never insubordinate or confrontational to his supervisor or to any Judge and he never acted out toward such officials. He was not accused of throwing objects at anyone. He engaged in misconduct, but not the same type of misconduct as plaintiff. And he chose to settle the charges against him rather than going to trial.

Because plaintiff cannot show that she is similarly situated to either Arthur Swint or Wayne Powell, plaintiff's claim that she was treated differently because of her race when she was terminated must be dismissed.[2]

Plaintiff's claim that she was discriminated against on account of her race because she did not get a permanent work station the moment she arrived at the Red Hook Community Justice Center must also be dismissed. (*See* Morales Aff. Ex. X at 117–121.) There comes a point when courts confronted with this sort of nonsense must say enough is enough. Not being given a workstation until the person she was replacing had trained her and vacated the premises is so trivial and inconsequential that it cannot be assigned as an instance in which plaintiff was discriminated against in the terms and conditions of her employment. Plaintiff received her own workstation within days of her arrival in Red Hook, and there is not the slightest evidence that anything except the presence of one more person than there were workstations at the facility was responsible for the negligible delay. Plaintiff has no basis to complain. (*See* at 121–22.)

Conclusion

Plaintiff has failed to raise any genuine issue of fact on those claims over which this Court has jurisdiction, so defendant's motion for summary judgment dismissing them is granted.

The Clerk of the Court is directed to grant defendant's motion and to close the file in this matter.

---

**2.** The same would be true if plaintiff were deemed to have exhausted her claim of gender-based disparity in her treatment vis a vis the treatment of Swint and Powell; she fails to raise a genuine issue of fact that these two men were similarly situated to her in all *material* respects.