Dhiri TRIVEDI, Petitioner,

v.

N.Y.S. UNIFIED COURT SYSTEM OFFICE OF COURT ADMINISTRATION, Defendant.

Hrishikesh Bhattacharjee, Petitioner,

v.

N.Y.S. Unified Court System Office of Court Administration, Defendant.

Douga Ba, Petitioner,

v.

Office of the Courts Administration, et ano, Defendant.

Pa B.F. Drammeh, Petitioner,

v.

Office of the Courts Administration, et ano, Defendant.

Hamadou T. Seck, Petitioner,

v.

Office of the Courts Administration, et ano, Defendant.

Nos. 10 Civ. 7356(PAC)(FM), 10 Civ. 7390(PAC)(FM), 10 Civ. 7405(PAC)(FM), 10 Civ. 7406(PAC)(FM), 10 Civ. 7659(PAC)(FM).

United States District Court, S.D. New York.

Sept. 26, 2011.

---

5. The Court has considered all of the parties' other arguments and found them to be moot or without merit.

Dhiri Trivedi, Glen Oaks, NY, pro se.

Hrishikesh Bhattacharjee, Queens, NY, pro se.

Douga Ba, Bronx, NY, pro se.

Pa B. F. Drammeh, New York, NY, pro se.

Hamadou T. Seck, New York, NY, pro se.

Pedro Angel Morales, NY State Office of Court Administration, New York, NY, for Defendants.

## ORDER ADOPTING R & R

PAUL A. CROTTY, District Judge:

*Pro se* plaintiffs Dhiri Trivedi ("Trivedi"), Hrishikesh Bhattacharjee ("Bhattacharjee"), Douga Ba ("Ba"), Pa B.F. Drammeh ("Drammeh"), and Hamadou Seck ("Seck") (collectively, "Plaintiffs"), former court interpreters for the New York Unified Court System Office of Court Administration ("OCA"), bring these actions pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), and the Age Discrimination in Employment Act of 1964, 29 U.S.C. §§ 621, *et seq.* ("ADEA") against their former employer, OCA. Ba, Drammeh and Seck also assert Title VII and ADEA claims against their union, District Council 37 Local 1070 ("DC 37"). Drammeh, Seck, and Trivedi assert claims pursuant to the New York City Human Rights Law, N.Y. City Admin. §§ 8–101, *et seq.* ("NYCHRL"). Additionally, Ba, Drammeh, and Trivedi assert claims pursuant to the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.* ("NYSHRL"). Trivedi asserts a claim pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112, *et seq.* ("ADA"). Finally, Bhattacharjee and Trivedi now seek to amend their complaints to include claims pursuant to 42 U.S.C. § 1983 ("Section 1983").

OCA terminated Plaintiffs from their positions as court interpreters and transla-

tors after they failed a required English proficiency examination. Plaintiffs allege that OCA developed and administered its examinations in a discriminatory manner on the basis of race and national origin. Ba, Drammeh, and Seck also allege that DC 37 provided them with inadequate representation in connection with OCA's proficiency examination and was complicit with OCA's violations of their civil rights.

OCA moved to dismiss Plaintiffs' complaints pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. DC 37 moved to dismiss the complaints in which it is named pursuant to 12(b)(6), or, in the alternative, for summary judgment pursuant to Rule 56. On August 5, 2011, Magistrate Judge Frank Maas issued a Report and Recommendation ("R & R") recommending that the Court grant in part and deny in part OCA's motions and grant DC 37's motions in their entirety. OCA, Trivedi, and Bhattacharjee filed timely objections. The Court has reviewed the R & R, as well as the objections. For the reasons that follow, the Court adopts Magistrate Judge Maas's recommendations, and grants in part and denies in part OCA's motions and grants DC 37's motions in their entirety.

## BACKGROUND [1]

### I. Facts

OCA uses three methods to certify and test the qualifications of full and part-time court employed interpreters depending on the language the interpreter translates. Spanish interpreters are subject to a lengthy two-part exam, consisting of multiple choice and oral portions. Interpreters of the eleven most prominent languages other than Spanish also take a two-part exam. Interpreters of other languages

---

1. The facts are taken from the R & R, which are derived from the parties' statements and facts that were judicially noticed. (R & R 729–30.)

have to pass a multiple choice English proficiency test, and depending on the language, sometimes an oral exam. OCA continues to develop and implement oral examinations in these additional languages.

Plaintiffs were all employed full-time as court interpreters with OCA. Ba and Seck are African–American males who worked as both French and Wolof interpreters. Drammeh is an African–American male who worked as a Wolof, Mandingo, and Soninke interpreter. Bhattacharjee is a Bangladeshi male who worked as a Bengali interpreter. Trivedi is a woman from India who worked as a Hindi, Urdi, and Gujarati translator and interpreter.

In early 2008, Plaintiffs were notified by OCA that they would be required to take and pass a new type of English proficiency exam as a condition of their continued employment. After learning of this, Ba, Drammeh and Seck conveyed their concerns about the exam to DC 37. DC 37 persuaded them to take the test. Each Plaintiff took and failed one or both parts of the test, and any re-tests that were administered. The Plaintiffs were fired as a result of their test results.

Ba, Drammeh and Seck contend that OCA administered the new exam to only interpreters of African descent. Bhattacharjee and Trivedi complain about the testing conditions, and Bhattacharjee also contends that the passing score for Bengali interpreters was much higher than for other languages.

## II. Procedural History

After being fired, Ba, Drammeh, and Seck each filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that OCA and DC 37 discriminated against them on the basis of their race and national origin.

Bhattacharjee filed an EEOC charge alleging national origin discrimination and retaliation. Trivedi filed an EEOC charge claiming only retaliation. In all cases, the EEOC found no basis to find a violation of federal law; but it issued each Plaintiff a right-to-sue letter.

In September 2010, Plaintiffs commenced their respective actions. On January 14, 2011 and February 8, 2011, DC 37 and OCA, respectively, filed motions to dismiss the complaints of Ba, Drammeh, and Seck. On March 22, 2011 and April 1, 2001, OCA filed motions to dismiss Trivedi and Bhattacharjee's complaints, respectively. Each Plaintiff filed opposition papers; OCA and DC 37 filed reply papers.

This Court referred Plaintiffs' cases to Magistrate Judge Maas for general pretrial matters and dispositive motions. On August 5, 2011, Magistrate Judge Maas issued a R & R.

## III. Magistrate Judge Maas's R & R

In his R & R, Magistrate Judge Maas recommended that the Court grant in part and deny in part OCA's motions and grant DC 37's motions in their entirety.

### A. Claims Against OCA

#### 1. ADEA, ADA, Section 1983, NYSHRL and NYCHRL

Magistrate Judge Maas concluded that Plaintiffs' claims raised under the ADEA, ADA, Section 1983,[2] NYSHRL and NYCHRL against OCA are barred by sovereign immunity under the Eleventh Amendment.

 Pursuant to the Eleventh Amendment to the United States Constitution, a state and its agencies generally are

---

**2.** While no Plaintiff raised a Section 1983 claim, Bhattacharjee and Trivedi seek to amend their complaints to do so. Magistrate

Judge Maas considered a Section 1983 claim and found that any such claim would fail for the reasons discussed below.

immune from suit in federal court. *See Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54–56, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Magistrate Judge Maas found that OCA, as the administrative arm of the New York State Unified Court System, is a public entity that is not amenable to suit under the Eleventh Amendment. (R & R 734) (citing *Gollomp v. Spitzer,* 568 F.3d 355, 365–68 (2d Cir.2009); *Anderson v. State of N.Y., Office of Ct. Admin. of Unified Ct. Sys.,* 614 F.Supp.2d 404, 426 (S.D.N.Y.2009).)

▮ Magistrate Judge Maas then found that Plaintiffs' claims did not qualify for either of the two exceptions to sovereign immunity under the Eleventh Amendment, which apply where (1) there has been a clear abrogation of the immunity by Congress, or (2) the state has explicitly and unequivocally waived immunity. (R & R 734–35.) Congress has not abrogated sovereign immunity over claims brought under the ADEA, ADA and Section 1983. *Darcy v. Lippman,* 356 Fed.Appx. 434, 436 (2d Cir.2009) (sovereign immunity under ADEA and ADA not abrogated); *Quern v. Jordan,* 440 U.S. 332, 340–42, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (sovereign immunity under Section 1983 not abrogated). Nor has New York explicitly and unequivocally waived its sovereign immunity with respect to claims brought under the ADEA, ADA, Section 1983, NYSHRL and NYCHRL. *Canales–Jacobs v. N.Y. State Office of Ct. Admin.,* 640 F.Supp.2d 482, 498 (S.D.N.Y.2009) (New York has not waived immunity with respect to ADEA claims); *Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38–40 (2d Cir. 1977) (New York has not waived immunity with respect to Section 1983 claims); *Martin v. Baruch Coll.,* No. 10 Civ. 3915(DAB), 2011 WL 723565, at *2 (S.D.N.Y. Feb. 18, 2011) (New York has not waived immunity with respect to ADA claims); *Tuckett v. N.Y. State Dep't of Tax. & Fin.,* No. 99 Civ. 0679(BJS), 2000 WL 1028662, at *2

(S.D.N.Y. July 26, 2000) (New York has not waived immunity with respect to NYSHRL claims); *Leiman v. State of N.Y.,* No. 98 Civ. 5538(MHD), 2000 WL 1364365, at *7 (S.D.N.Y. Sept. 21, 2000) (New York has not waived immunity with respect to NYCHRL claims). Accordingly, Magistrate Judge Maas recommended that OCA's motions be granted with respect to Plaintiffs' ADEA, ADA, Section 1983, NYSHRL and NYCHRL claims.

#### 2. *Title VII*

▮ Congress has abrogated sovereign immunity with respect to race discrimination claims under Title VII. (R & R 734–35) (citing *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).) Accordingly, Magistrate Judge Maas analyzed Plaintiffs' Title VII claims against OCA on the merits.

▮ First, Magistrate Judge Maas considered OCA's arguments that Drammeh and Trivedi failed to exhaust their administrative remedies by filing timely charges of discrimination with EEOC that relate to, or are reasonably related to, their *pro se* claims in federal court. (*Id.* 735, 736–38.) Title VII requires plaintiffs to exhaust their administrative remedies by filing timely charges of discrimination with the EEOC before they initiate suits arising out of the charges. 42 U.S.C. §§ 2000e–5(e)(1), (f)(1). A claim not expressly raised in an EEOC charge may be brought in federal court only if it is "reasonably related" to the EEOC claim, such that it involved conduct that would have fallen within the scope of the EEOC investigation. *See Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.,* 990 F.2d 1397, 1401 (2d Cir.1993), *superseded on other grounds by statute.*

With respect to Drammeh, Magistrate Judge Maas concluded that Drammeh had exhausted his administrative remedies

with respect to his discrimination claims based on race, national origin and color, but not with respect to his gender/sex or religion claims. (*Id.* 736–37.) Magistrate Judge Maas found that Drammeh's discrimination claims based on race, color, and national origin in this action were related, or reasonably related, to his formal EEOC charge, such that EEOC could have been expected to explore each of these possibilities as part of its investigation. (*Id.* 736–37) (citing *Sharabura v. Taylor*, No. 03 CV 1866(JG), 2003 WL 22170601, at *3 (E.D.N.Y. Sept. 16, 2003) (holding that an EEOC claim listing discrimination based only on national origin would alert EEOC to potential race and color discrimination claims as well).) Magistrate Judge Maas found, however, that Drammeh's formal EEOC charge lacked any substantive allegations about religion or gender that would have alerted EEOC that he was pursuing such discrimination claims. (*Id.* 737.) Accordingly, Magistrate Judge Maas recommended that Drammeh's religious and gender discrimination claims be dismissed for failure to exhaust his administrative remedies. (*Id.* 736–37.)

As to Trivedi, Magistrate Judge Maas concluded that she had exhausted her administrative remedies with respect to her national origin discrimination claim, but not with respect to her gender/sex claim. (*Id.* 737.) Magistrate Judge Maas noted that in her EEOC charge, Trivedi checked the box only for retaliation and not for discrimination based on national origin or sex. (*Id.*) Nonetheless, Magistrate Judge Maas found that the substance of her EEOC charge was similar to the other Plaintiffs' allegations of discrimination based on national origin. (*Id.*) (citing *Al-*

*onzo v. Chase Manhattan Bank, N.A.*, 25 F.Supp.2d 455, 458 (S.D.N.Y.1998) ("[I]t is the substance of the charge and not its label that controls.").) He found that Trivedi's gender/sex discrimination charge, however, was not reasonably related to her retaliation claim. (*Id.*) Accordingly, Magistrate Judge Maas recommended that Trivedi's gender/sex discrimination claim be dismissed for failure to exhaust her administrative remedies. (*Id.*)

■ Second, Magistrate Judge Maas analyzed and found that each Plaintiff stated a *prima facie* case of discrimination against OCA, by showing that: (1) they were members of a protected class, (2) they were qualified for the positions they held, (3) they suffered adverse employment actions, and (4) the circumstances give rise to an inference of discrimination. (*Id.* 735–36, 737–39) (citing *Ghosh v. N.Y. City Dep't of Health*, 413 F.Supp.2d 322, 332 (S.D.N.Y.2006) (listing elements).) With respect to Trivedi's complaint, Magistrate Judge Maas found her allegations regarding testing conditions were insufficient to give rise to an inference of discrimination, but that her allegation that interpreters of other languages were treated differently, when construed liberally, warranted an inference that the circumstances surrounding her testing and subsequent termination were discriminatory.[3]

■ Finally, Magistrate Judge Maas analyzed each Plaintiff's discrimination claim based on retaliation, and recommended that these claims be dismissed. (R & R 739–40.) To establish a *prima facie* case in the retaliation context, an employee must show: (1) the employee engaged in a protected activity; (2) the employer knew of this activity; (3) the employer took ad-

---

3. Magistrate Judge Maas noted that Trivedi's allegations may refer to time-barred conduct. (R & R 739 & n. 11.) Nonetheless, Magistrate Judge Maas construed Trivedi's allega- tions liberally and assumed that her claims related to tests administered to Southern Asians in 2008. (*Id.* 739.)

verse action against the employee; and (4) there was a causal relationship between the adverse action and the employee's protected activity. *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir.2001).

Ba, Drammeh, and Seck claimed that they were subject to harassment, discriminatory proficiency testing and ultimately termination as a consequence of their involvement in a 2001 Class Action against OCA. (*Id.* 739.) Magistrate Judge Maas found that Ba, Drammeh, and Seck failed to show a causal relationship between the protected activity and the adverse action that occurred almost ten years later. (*Id.* 739–40.) Accordingly, Magistrate Judge Maas recommended that Ba, Drammeh and Seck's retaliation claims be dismissed.

Magistrate Judge Maas found that Trivedi, who did not participate in the 2001 Class Action, failed to allege that she engaged in a protected activity. (*Id.* 740.) Magistrate Judge Maas noted that from the face of her complaint, the only instance in which Trivedi may have opposed OCA was her complaint to DC 37 about deficient testing equipment. (*Id.*) Magistrate Judge Maas found that this complaint did not constitute protected activity under Title VII. (*Id.* 740) (citing *Kamrowski v. Morrison Mgmt. Specialist*, No. 05 Civ. 9234(KMK), 2010 WL 3932354, at *20 (S.D.N.Y. Sept. 29, 2010).) Further, Magistrate Judge Maas found that Trivedi also failed to allege a casual relationship, since she conceded that she was fired for failing the proficiency exam. (*Id.* 740.) Accordingly, Magistrate Judge Maas recommended that Trivedi's retaliation claim be dismissed.

Magistrate Judge Maas liberally construed Bhattacharjee to raise a retaliation claim, despite Bhattacharjee's failure to check the "retaliation" box in his amended complaint. (*Id.*) Bhattacharjee alleged that he was subjected to unfair and dis-

criminatory testing conditions during his re-examination, after he and other Bengalis protested and filed a grievance. (*Id.*) Bhattacharjee's EEOC charge, however, discloses that the testing conditions at his re-examination were substantially the same as the conditions at his first examination, before he filed a grievance. (*Id.*) Accordingly, Magistrate Judge Maas found that Bhattacharjee failed to set forth any facts to show a plausible causal link between his grievance and the subsequent testing conditions and recommended that Bhattacharjee's retaliation claim be dismissed. (*Id.*)

In sum, Magistrate Judge Maas recommended dismissal of Plaintiffs' ADEA, ADA, Section 1983, NYSHRL and NYCHRL claims along with Plaintiffs' Title VII claims based on retaliation against OCA. Magistrate Judge Maas recommended that Plaintiffs' Title VII claims against OCA based on discrimination be allowed to proceed, but limited Drammeh's discrimination claims to national origin, color and race and Trivedi's discrimination claim to national origin.

### B. *Claims Against DC 37*

Magistrate Judge Maas analyzed and recommended dismissal of Ba, Drammeh and Seck's claims against DC 37 for discrimination under Title VII and the ADEA, breach of the duty of fair representation, and under NYSHRL and NYCHRL.

First, Magistrate Judge Maas considered Ba, Drammeh and Seck's discrimination claims under Title VII and the ADEA. (R & R 741–42.) Unions are liable for an employer's discrimination only where: (1) the union breached its duty of fair representation by allowing an alleged violation go unrepaired and (2) the union's actions were motivated by discriminatory animus. *Morris v. Amalgamated Lithog-*

*raphers of Am.,* 994 F.Supp. 161, 170 (S.D.N.Y.1998). A union breaches its duty of fair representation when its conduct is "arbitrary, discriminatory or in bad faith." *Id.* The union's negligence, however, does not amount to a breach of its duty of fair representation. *Coleman v. City of N.Y.,* No 99 CV 1159(JG), 1999 WL 1215570, at *4 (E.D.N.Y. Dec. 7, 1999). Magistrate Judge Maas found that Ba, Drammeh, and Seck's discrimination claims—based on DC 37's failure to: intervene when OCA subjected them to a proficiency exams, provide better training for the exams, and address technical difficulties that arose during the exams—at best constituted negligence. (*Id.* 741–42.) Moreover, Magistrate Judge Maas found that there had been no plausible allegation that DC 37 was motivated by discriminatory animus.

Magistrate Judge Maas found that Ba, Drammeh and Seck's Title VII claims alleging that DC 37 induced them to take the proficiency exam by disseminating false information fared no better. (*Id.* 741–42.) Ba, Drammeh and Seck again failed to show that, in inducing them to take a proficiency exam, DC 37 acted with discriminatory animus. (*Id.*) Accordingly, Magistrate Judge Maas recommended granting DC 37's motions with respect to Title VII claims.

Magistrate Judge Maas found that Ba, Drammeh and Seck failed to plead a *prima facie* claim of age discrimination. (*Id.* 742.) He found that, aside from setting forth their respective ages, none of the Plaintiffs pled any facts suggesting that DC 37 discriminated against them because of their age. (*Id.*) He thus recommended granting DC 37's motions with respect to ADEA claim.

Second, Magistrate Judge Maas found that Ba, Drammeh and Seck's duty of fair representation claims should be dismissed because federal courts lack subject matter jurisdiction over duty of fair representa-

tion claims brought by employees of political subdivisions, and, as discussed above, OCA is a governmental entity. (*Id.* 742–43) (citing *Gear v. Dep't of Educ.,* No. 07 Civ. 11102, 2010 WL 5297850, at *3–4 (S.D.N.Y. Dec. 21, 2010).)

Third, Magistrate Judge Maas found that because claims raised under the NYSHRL must satisfy the same standard of recovery as Title VII claims, Ba and Drammeh's NYSHRL claims fail. (*Id.* 742–43.)

■ Fourth, Magistrate Judge Maas noted that while the NYCHRL should be construed liberally, claims "must still link the adverse action to a discriminatory or retaliatory motiv[e]." (*Id.* 743) (quoting *Joseph v. N.Y. City Dep't of Corr.,* No. 10 CV 1265(NGG), 2011 WL 1843162, at *9 (E.D.N.Y. May 13, 2011).) Magistrate Judge Maas found that Drammeh and Seck failed plausibly allege that DC 37 undertook the actions it did either out of discriminatory animus or an effort to retaliate against Drammeh and Seck for engaging in protected activity. (*Id.*) Accordingly, Magistrate Judge Maas recommended dismissal of their NYCHRL claims. (*Id.*)

In sum, Magistrate Judge Maas recommended that all claims against DC 37 be dismissed.

## DISCUSSION

### IV. Standard of Review for a Report and Recommendation

■ A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When a timely objection has been made to the magistrate's recommendations, the court is required to review the contested portions de *novo. Pizarro v. Bartlett,* 776 F.Supp. 815, 817 (S.D.N.Y.1991). The court, however, "may adopt those portions

of the Report to which no objections have been made and which are not facially erroneous." *La Torres v. Walker*, 216 F.Supp.2d 157, 159 (S.D.N.Y.2000). Moreover, "[w]hen a party makes only conclusory or general objections ... the Court will review the Report strictly for clear error.... Objections to a Report must be specific and clearly aimed at particular findings in the magistrate judge's proposal." *Molefe v. KLM Royal Dutch Airlines*, 602 F.Supp.2d 485, 487 (S.D.N.Y. 2009) (citations omitted).

## V. The Parties' Objections

OCA, Trivedi and Bhattacharjee filed timely objections to the R & R. The Court reviewed these objections and finds them without merit.

### A. OCA's Objection

OCA objected to the R & R only to the extent that it did not address OCA's argument that Bhattacharjee's race and national origin discrimination claims were barred by the statute of limitations. (OCA Objection 1.) Under Title VII, an employee typically must file a charge of discrimination with the EEOC within 300 days of the discriminatory act. *See* 42 U.S.C. § 2000e–5(e)(1). On January 28, 2010, Bhattacharjee filed a charge with EEOC alleging that OCA discriminated against him by giving him language proficiency examinations that were longer and required a higher score to pass than the proficiency exams for other languages. (Bhattacharjee Moralis Aff. Ex. B.) Specifically, in Bhattacharjee's EEOC claim, he alleged that: he was instructed to take a language proficiency examination on March 22, 2008, which he failed; he took a

re-examination on August 4, 2008, which he failed; as a result, he was fired on January 30, 2009. (*Id.*) He claimed that after filing a grievance he was allowed to take another re-examination on August 21, 2009, which he failed for a third time. (*Id.*) OCA contends that Bhattacharjee's proficiency exams on March 22, 2008 and August 4, 2008, and his subsequent discharge on January 30, 2009 are all discrete acts that fall outside Title VII's 300–day window, and thus are time-barred. (OCA Objections 7.) OCA concedes that Bhattacharjee's August 21, 2009 re-examination falls within the 300–day window, which began on April 3, 2009. (*Id.* 7.)

 An exception to Title VII's 300–day rule applies when the discriminatory acts constitute a continuing violation. *See Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir.1997). "The continuing-violation exception applies where there is evidence of ... the repeated use of discriminatory ... employment tests." *Id.* Bhattacharjee's allegations relate to OCA's repeated use of an allegedly discriminatory proficiency exam and thus constitute a continuing violation.[4] Since Bhattacharjee timely filed an EEOC action with respect to his August 21, 2009 re-examination, which was part of a continuous violation of discriminatory exams, Bhattacharjee's claim is not time-barred. *See Deravin v. Kerik*, No. 00 CV 7487(KMW)(KNF), 2007 WL 1029895, at *4 (S.D.N.Y. Apr. 2, 2007).

### B. Trivedi's Objection

In her objections to the Court, Trivedi argues that OCA discriminated against her in violation of Title VII and objects to the dismissal of her ADA claim.

---

**4.** To take advantage of the continuing violation exception, a plaintiff must clearly assert the continuous violation in both his EEOC filing and his complaint. *See Miller v. Int'l Telephone and Telegraph Corp.*, 755 F.2d 20,

26 (2d Cir.1985). While Bhattacharjee never mentions a "continuous violation" in his papers, the Court liberally construes this to be his claim.

Trivedi's discussion of OCA's alleged discrimination, in violation of Title VII, does not amount to an objection. While Trivedi provides additional factual allegations in an attempt to show "a contradiction" between the OCA's proficiency examination policy, as detailed in the background section of the R & R, and her personal treatment, she does not allege that Magistrate Judge Maas's factual recitation of OCA's examination policy was, in any way, incorrect. (*See* Trivedi's Objections 1–2.) Likewise, while Trivedi argues that her discrimination claim is not time-barred, she ignored that Magistrate Judge Maas construed her allegations liberally and assumed that Trivedi's claim was not time-barred. (*See* R & R 739 & n. 11.) Magistrate Judge Maas concluded that Trivedi stated a Title VII claim for discrimination based on national origin against OCA. Accordingly, Trivedi has not raised any objection regarding Title VII for the Court to address.[5]

 Trivedi's objection pertaining to her ADA claim is without merit. Trivedi objects to a footnote in the R & R, where Magistrate Judge Maas recommended dismissal of Trivedi's ADA claim for failing to make any mention of a disability. (R & R 729 n. 2.) In her objection, Trivedi provides additional facts relating to her purported physical disability. Magistrate Judge Maas had also concluded, however, that Trivedi's ADA claim was barred by sovereign immunity pursuant to the Eleventh Amendment. (*See* R & R 734–35.) The OCA is a government entity that, pursuant to sovereign immunity, is not amenable to suit. *See Anderson v. State of N.Y., Office of Ct. Admin. of Unified Ct. Sys.,* 614 F.Supp.2d 404, 426 (S.D.N.Y.2009). While there are two exceptions to sovereign immunity, Trivedi's ADA claim does not qualify for either.

Congress has not abrogated immunity for claims brought under the ADA, and New York State has not waived its immunity with respect to such claims. *See Martin v. Baruch Coll.,* No. 10 Civ. 3915(DAB), 2011 WL 723565, at *2 (S.D.N.Y. Feb. 18, 2011). Accordingly, despite Trivedi's new factual allegations, Trivedi's claim under the ADA still fails.

### C. Bhattacharjee's Objections

Bhattacharjee timely submitted objections. (Bhattacharjee Objections 1–2.) Bhattacharjee argues that a state agency can be sued under Title VII (*id.* 1); but in doing so ignores that Magistrate Judge Maas recommended that his Title VII claim be allowed to proceed. Bhattacharjee also objected to OCA's contention that the statute of limitations barred his claim. (*Id.* 2.) This Court considered and, for the reasons above, denies OCA's statute of limitations challenge, its only objection. Bhattacharjee raises no other objection for the Court to address.

### CONCLUSION

For the foregoing reasons, Defendant DC 37's motions are GRANTED in their entirety; OCA's motions are GRANTED IN PART and DENIED IN PART. Specifically:

(1) DC 37's motions to dismiss Ba, Drammeh and Seck's claims against it, are GRANTED in their entirety. (No. 10 Civ. 7405, ECF No. 11; No. 10 Civ. 7406, ECF No. 12; No. 10 Civ. 7659, ECF No. 11.) DC 37 is therefore no longer a defendant in this action.

(2) OCA's motion to dismiss Ba's claims is GRANTED IN PART and DENIED IN PART. (No. 10 Civ. 7405,

---

5. Trivedi's objections contain no reference to a discrimination claim based on gender/sex,

which was properly dismissed for failure to exhaust. (*See supra* 722–24.)

ECF No. 20). OCA's motion is GRANTED with respect to claims raised under: the ADEA, pursuant to 29 U.S.C. §§ 621, *et seq.;* the NYSHRL, pursuant to N.Y. Exec. Law §§ 290, *et seq.;* and Title VII, based on retaliation, pursuant to 42 U.S.C. §§ 2000e, *et seq.* OCA's motion is DENIED with respect to Ba's Title VII claim based on discrimination.

(3) OCA's motion to dismiss Bhattacharjee's claims is GRANTED IN PART and DENIED IN PART. (No. 10 Civ. 7390, ECF No. 7.) OCA's motion is GRANTED with respect to claims raised under: the ADEA, pursuant to 29 U.S.C. §§ 621, *et seq.;* and Title VII, based on retaliation, pursuant to 42 U.S.C. §§ 2000e, *et seq.* OCA's motion is DENIED with respect to Bhattacharjee's Title VII claim based on discrimination.

(4) Bhattacharjee's request to amend his complaint to include a Section 1983 claim, pursuant to 42 U.S.C. § 1983, is DENIED.

(5) OCA's motion to dismiss Drammeh's claims is GRANTED IN PART and DENIED IN PART. (No. 10 Civ. 7406, ECF No. 20.) OCA's motion is GRANTED with respect to claims raised under: the ADEA, pursuant to 29 U.S.C. §§ 621, *et seq.;* the NYCHRL, pursuant to N.Y. City Admin. §§ 8–101, *et seq.;* the NYSHRL, pursuant to N.Y. Exec. Law §§ 290, *et seq.;* and Title VII, based on retaliation, pursuant to 42 U.S.C. §§ 2000e, *et seq.* OCA's motion is DENIED with respect to Drammeh's Title VII claim based on discrimination, but Drammeh's discrimination claim is limited to national origin, color and race.

(6) OCA's motion to dismiss Seck's claims is GRANTED IN PART and DENIED IN PART. (No. 10 Civ. 7659, ECF No. 20.) OCA's motion is GRANTED with respect to claims raised under: the ADEA, pursuant to 29 U.S.C. §§ 621, *et seq.;* the NYCHRL, pursuant to N.Y. City Admin. §§ 8–101, *et seq.;* the NYSHRL, pursuant to N.Y. Exec. Law §§ 290, *et seq.;* and Title VII, based on retaliation, pursuant to 42 U.S.C. §§ 2000e, *et seq.* OCA's motion is DENIED with respect to Seck's Title VII claim based on discrimination.

(7) OCA's motion to dismiss Trivedi's claims is GRANTED IN PART and DENIED IN PART. (No. 10 Civ. 7356, ECF No. 7.) OCA's motion is GRANTED with respect to claims raised under: the ADEA, pursuant to 29 U.S.C. §§ 621, *et seq.;* the NYCHRL, pursuant to N.Y. City Admin. §§ 8–101, *et seq.;* the ADA, pursuant to 42 U.S.C. §§ 12112, *et seq.;* and Title VII, based on retaliation, pursuant to 42 U.S.C. §§ 2000e, *et seq.* OCA's motion is DENIED with respect to Trivedi's Title VII claim based on discrimination, but Trivedi's discrimination claim is limited to national origin.

(8) Trivedi's request to amend her complaint to include a Section 1983 claim, pursuant to 42 U.S.C. § 1983, is DENIED.

Plaintiffs' remaining Title VII discrimination claims against OCA are referred to Magistrate Judge Maas for general pretrial matters and dispositive motions.

SO ORDERED.

## REPORT AND RECOMMENDATION TO THE HONORABLE PAUL A. CROTTY *

FRANK MAAS, United States Magistrate Judge.

*Pro se* plaintiffs Dhiri Trivedi ("Trivedi"), Hrishikesh Bhattacharjee ("Bhattacharjee"), Douga Ba ("Ba"), Pa B.F. Drammeh ("Drammeh"), and Hamadou Seck ("Seck") (collectively, "Plaintiffs"), former court interpreters for the New York Unified Court System Office of Court Administration ("OCA"), bring these actions pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq.* ("ADEA"), against their former employer, OCA, and their union, District Council 37 Local 1070 ("DC 37").[1] Drammeh, Seck, and Trivedi also assert claims pursuant to the New York City Human Rights Law, N.Y. City Admin. Code §§ 8–101, *et seq.* ("NYCHRL"). Additionally, Ba, Drammeh, and Trivedi assert claims pursuant to the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.* ("NYSHRL").[2] Finally, Bhattacharjee and Trivedi seek to amend their complaints to include a claim pursuant to 42 U.S.C. § 1983 ("Section 1983").[3]

OCA terminated the Plaintiffs from their positions as court interpreters and translators after they failed a required English proficiency exam. Plaintiffs allege that OCA developed and administered that exam in a discriminatory manner on the basis of race and/or national origin. Ba,

Drammeh, Seck, and Trivedi also allege that DC 37 provided them with inadequate representation in connection with the exam, and that its complicity with OCA violated their civil rights. Ba, Drammeh, and Seck each seek damages of $2 million. Bhattacharjee seeks reinstatement as a court interpreter in addition to an award of back pay from the time of his termination. Trivedi seeks unspecified damages to compensate for her lost wages and emotional distress.

OCA has moved to dismiss the complaints pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. DC 37 has moved to dismiss the complaints in which it is named pursuant to Rule 12(b)(6), or, in the alternative, for summary judgment pursuant to Rule 56. For the reasons set forth below, OCA's motion should be granted in part and denied in part, and DC 37's motion should be granted in its entirety.

### I. Background

Unless otherwise indicated, the following facts are judicially noticed or taken from Plaintiffs' complaints and presumed to be true.

#### A. Court Translator Testing and Certification

OCA uses three methods to certify and test the qualifications of full and part-time court-employed interpreters depending on the language the interpreter translates.

---

\* Kristina Wright, a third-year law student at New York Law School, provided substantial assistance in the preparation of this Report and Recommendation.

1. OCA is the only defendant named in Bhattacharjee's complaint.

2. In her form *pro se* complaint, Trivedi checked the box for every potentially-applicable statute, including the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112, *et seq.* ("ADA"). The non-boilerplate portions of

her complaint make no mention, however, of any disability or disability-related discrimination. Trivedi's ADA claim therefore should be dismissed for failure to state a claim.

3. Bhattacharjee's and Trivedi's first mention of a Section 1983 claim appears in their submissions in opposition to the motion to dismiss filed, respectively, on May 12, and April 29, 2011. (Bhattacharjee Aff. in Opp'n ¶ 22; Trivedi Affirm. in Opp'n ¶ 7).

(New York State Unified Court System, *Court Interpreting in New York: A Plan of Action*, 6 (April 2006), http://www. nycourts.gov/courtinterpreter/pdfs/action_plan_040506.pdf) (hereinafter *"Plan of Action"*). First, Spanish interpreters are subjected to a lengthy, in-depth, two-part exam, consisting of multiple choice and oral portions. (*Id.*). Spanish interpreters then are ranked based on their final scores. (*Id.*). Interpreters of the eleven most prominent languages other than Spanish also must take a two-part exam.[4] (*Id.* at 7). The oral portions of these exams are recorded and evaluated by language experts. (*Id.*). Unlike Spanish interpreters, however, these interpreters are not ranked according to their test scores and, therefore, are known as "non-competitive" interpreters. (*Id.*). Finally, interpreters of other languages, for which there is no oral exam, must pass the same multiple-choice English proficiency test as non-competitive interpreters.[5] (*Id.*). OCA also uses "a combination of interviews, resume reviews and reference checks" to evaluate the qualifications of interpreters. (*Id.*).

Additionally, OCA at times hires private interpreters on a per diem basis. (*Id.*). Per diem interpreters of Spanish and any of the other eleven most prevalent languages must pass the same two-part exam administered to court-employed interpreters. For per diem interpreters of languages for which there is no oral exam, "court managers conduct informal assessments of the[ir] qualifications ..., typically consisting of a review of [their] education and prior experience." (*Id.* at 8).

## B. *Parties*

Ba is a 57–year–old African–American man who began employment with OCA as a per diem French and Wolof court interpreter in 1994. (Ba Compl. ¶ II.E). Drammeh is an African–American man who began employment with OCA as a per diem Wolof, Mandingo, and Soninke interpreter in 1986. (Drammeh Compl. ¶ II.E). Seck is a 59–year–old African–American man who began employment with OCA as a per diem French and Wolof interpreter in 1986. (Seck Compl. ¶ II.E). Ba, Drammeh, and Seck became full-time OCA court interpreters in 2001. (*Id.;* Ba Compl. ¶ II.E; Drammeh Compl. ¶ II.E). During their employment with OCA, Ba, Drammeh, and Seck received satisfactory evaluations and were not subject to any disciplinary action. (*Id.*)

Bhattacharjee is a 63–year–old man from Bangladesh who began employment with OCA as a per diem Bengali interpreter in 1996. (Bhattacharjee Compl. ¶ II.E). In 2005, Bhattacharjee was offered a full-time position with OCA contingent on his successful completion of a fifty-two week probationary period and a written English proficiency exam. (*Id.;* Bhattacharjee Aff. in Opp'n ¶ 3). Upon satisfying these requirements, Bhattacharjee became a full-time court interpreter in January 2006. (Bhattacharjee Compl. ¶ II.E). From January 2006 to January 2008, Bhattacharjee received outstanding performance evaluations. (*See* Bhattacharjee Aff. in Opp'n ¶¶ 5–12, Exs. 2–9).

Trivedi is a 76–year–old woman born in India with a graduate degree from Bombay University. (Trivedi Am. Compl. At-

---

4. These languages are Arabic, Cantonese, Greek, Haitian Creole, Italian, Korean, Mandarin, Polish, Portuguese, Russian, and Vietnamese. (*Plan of Action* at 7).

5. OCA continues to "develop and implement oral examinations in additional languages." (*Plan of Action* at 16). For example, in 2006 and 2007, OCA developed oral examinations for Albanian, Bengali, French, Fuzhou, Japanese, Turkish, and Urdu. (*Id.*).

tach. at 2). After obtaining United States citizenship in 1980, she began working with OCA as a Hindi, Urdu, and Gujarati translator and interpreter. (*Id.* ¶ II.E). In June 2005, Trivedi became a permanent, noncompetitive interpreter of Hindi, her native language. (*Id., Attach.* at 2).

OCA oversees all aspects of employment for court interpreters, including "the development and implementation of selection procedures to ensure that court interpreters have the necessary language proficiency to perform their duties competently and professionally." (New York State Unified Court System, *UCS Court Interpreter Manual and Code of Ethics,* 3 (Dec. 2008), http://www.nycourts.gov/courtinterpreter/pdfs/CourtInterpreterManual.pdf).

DC 37 is the largest public employee union in New York City, with approximately 125,000 members. (http://www.dc37.net/about/joinDC37.html) (last visited June 22, 2011). The Local 1070 chapter of DC 37 consists of court, county, and Department of Probation employees. (http://www.dc37.net/about/locals/local1070.html) (last visited June 22, 2011). Each of the Plaintiffs apparently is or was a member of DC 37. (*See, e.g.,* Ba Compl. ¶ II.E; Drammeh Compl. ¶ II.E; Seck Compl. ¶ II.E; Bhattacharjee Am. Compl. Attach. at 10; Trivedi Am. Compl. ¶ II.E).

### C. *Events Prior to Termination*

In 2001, Ba, Drammeh, Seck, and other interpreters of "exotic" languages brought a class action suit ("Class Action") against OCA in which they alleged that OCA's refusal to elevate them from per diem to permanent employment constituted unlawful discrimination. (*See* Ba Compl. ¶ II.E; Drammeh Compl. ¶ II.E; Seck Compl. ¶ II.E). Pursuant to a settlement of the Class Action, Ba, Drammeh, and Seck

were awarded full-time employment as court interpreters. (*Id.*).

In January 2008, Ba, Drammeh, and Seck were notified by OCA that they would be required to take, and pass, a new type of English proficiency exam as a condition of their continued employment. (Ba Affirm. in Opp'n Attach. at 1; Drammeh Affirm. in Opp'n Attach. at 1; Seck Affirm. in Opp'n Attach. at 1). After learning this, the three men relayed their concerns about the test to DC 37. (*Id.*). Although they initially refused to take the new English proficiency exam, DC 37 persuaded them to do so, stating that "the test would not have any adverse impact to [their] employment." (*Id.*). Despite this promise, DC 37 provided inadequate training for the exam, "failed to bring the matter to [the Public Employment Relations Board] for resolution, and threatened [them with] immediate termination of employment." (*Id.;* Ba Compl. Attach. at 2; Drammeh Morales Aff. Ex. B).

Ba, Drammeh, and Seck contend that OCA administered the new exam only to interpreters of African descent. (Ba Compl. ¶ II.E, Attach. at 2; Drammeh Compl. ¶ II.E; Drammeh Morales Aff. Ex. B; *see* Seck Compl. ¶ II.E). In early 2008, Ba and Drammeh took the written portion of that exam but failed. (Ba Compl. Attach. at 2; Drammeh Morales Aff. Ex. B). Ba later passed the written portion of the test on a second try, but failed both his first and second attempts at the oral exam in late 2008.[6] (Ba Compl. Attach. at 2). Ba made a final attempt at the oral exam in August 2009 but failed once again. (*Id.*). Drammeh failed the written exam two more times in late 2008 and August 2009. (Drammeh Morales Aff. Ex. B). Seck, too, evidently failed the proficiency

---

**6.** It is unclear why Ba was required take an oral exam since he served as a translator of

less prominent languages.

exam.[7] As a consequence, Ba, Drammeh, and Seck all were terminated in the second half of 2009 for failing the proficiency exam. (See Ba Compl. Attach. at 2; Drammeh Morales Aff. Ex. B; Seck Affirm. in Opp'n Attach. at 3 ¶ A).

Bhattacharjee first sat for the oral proficiency exam on March 22, 2008. (Bhattacharjee Aff. in Opp'n ¶ 13). He failed that exam but retook it on August 4, 2008. (Id. ¶ 14). During both examinations, Bhattacharjee was subjected to substandard testing conditions and procedures. (Id. ¶¶ 13–14, Ex. 10). Specifically, during the first exam, "the proctor failed to conduct the test in a professional manner" and "made several mistakes in starting and ending the recording of the test." (Id. ¶¶ 13–14). During the second exam, Bhattacharjee was instructed to translate a written statement orally into both English and Bengali. (Id. Ex. 10). Although he was prepared to begin translating within two minutes of receiving the text, the proctor required him to wait an additional three minutes, which caused him to run out of time before completing the two translations. (Id.).

Following the second exam, Bhattacharjee sent an email to the OCA Coordinator for Court Interpreters Services, Sandra Bryan, voicing his concern that "the proctor did not allow [him] to make use of the time [he] had remaining." (Id.). OCA ignored Bhattacharjee's demand "to know the rationale behind [the] proctor's actions," as well as his request to review the August 2008 test results. (Id.; Bhattacharjee Am. Compl. Attach. at 8 ¶ 5).

Bhattacharjee further maintains that the passing score for Bengali interpreters was 54, although interpreters of other languages only needed to receive a score of 30 to pass the oral examination.[8] (Bhattacharjee Aff. in Opp'n ¶ 16). Bhattacharjee also maintains that the exam for Bengali interpreters consisted of six parts while interpreters of other Indian languages were required to take only a four-part test. (Bhattacharjee Am. Compl. Attach. at 5).

After Bhattacharjee failed the oral exam a second time, OCA terminated him on January 30, 2009. (Id.). He then "filed a grievance along with other Bengali individuals" and was given the opportunity to retake the oral exam for a third time on August 21, 2009. (Id.). On December 1, 2009, OCA notified Bhattacharjee that he did not pass the third exam and would not be reinstated. (Id.).

In February 2008, Trivedi sat for the required English proficiency exam. (Trivedi Am. Compl. ¶ II.E, Attach. at 2). Trivedi passed the written portion of the exam but failed the oral test due to defective audio equipment and an inadequate testing environment. (Id. ¶ II.E). After Trivedi complained to DC 37 about the exam conditions, DC 37 and OCA came to a settlement agreement without Trivedi's knowledge or consent.[9] (Id.). Despite that agreement, Trivedi was terminated on December 3, 2009, for failing the oral exam. (Trivedi Morales Aff. Ex. B). Prior to its administration of the proficiency exam in February 2008, OCA never "demanded [that Trivedi] demonstrate [language] proficiency levels." (Id.).

### D. Procedural History

After being fired, Ba, Drammeh, and Seck each filed a charge of discrimination

---

**7.** Seck's complaint does not provide any details regarding his examination.

**8.** On at least one of the oral exams, Bhattacharjee achieved a score of 37 which would have been a passing score had he been treated the same as non-Bengali interpreters. (Bhattacharjee Aff. in Opp'n ¶ 16).

**9.** Trivedi does not set forth the circumstances leading to the agreement or any of its terms. (See Trivedi Am. Compl.).

with the Equal Employment Opportunity Commission ("EEOC") alleging that OCA and DC 37 discriminated against them on the basis of their race and national origin. (Ba Compl. Attach. at 2; Drammeh Morales Aff. Ex. B; *see* Seck Compl. Attach. at 1–3). Bhattacharjee filed an EEOC charge alleging national origin discrimination and retaliation. (Bhattacharjee Am. Compl. Attach. at 5). Trivedi filed an EEOC charge claiming only retaliation. (Trivedi Am. Compl. Attach. at 2). Based on its initial investigation, the EEOC found no basis to find a violation of federal law and issued each plaintiff a separate right to sue letter. (Drammeh Compl. Attach. at 1–3; Seck Compl. Attach. at 1–3; Bhattacharjee Am. Compl. Attach. at 1; Trivedi Am. Compl. Attach. at 1).[10] Plaintiffs then commenced their respective actions in September 2010.

DC 37 filed motions to dismiss the complaints of Ba, Drammeh, and Seck on January 14, 2011. OCA filed motions to dismiss the complaints of those plaintiffs on February 8, 2011, as well as a motion to dismiss Trivedi's complaint on March 22, 2011. OCA filed a motion to dismiss Bhattacharjee's complaint on April 1, 2011. Thereafter, each of the Plaintiffs filed opposition papers, and OCA and DC 37 filed reply papers. The motions therefore are fully submitted.

II. *Standard of Review*

 Under Rule 12(b)(1), a complaint must be dismissed if a court lacks subject matter jurisdiction over the action. In deciding a Rule 12(b)(1) motion, the Court is not limited to the face of the complaint and may consider evidence outside the pleadings to resolve disputed factual issues. *State Emp. Bargaining Agent Coal. v. Rowland,* 494 F.3d 71, 77 n. 4 (2d Cir.2007); *Phifer v. City of N.Y.,* 289 F.3d

49, 55 (2d Cir.2002). The plaintiff has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. *Phifer,* 289 F.3d at 55 (citing *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000)).

 A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of a plaintiff's claims for relief. *Krasner v. HSH Nordbank AG,* 680 F.Supp.2d 502, 511 (S.D.N.Y.2010) (Lynch, D.J.). In deciding the motion, the Court must accept as true all factual allegations made in the complaint and draw all reasonable inferences in favor of the plaintiff. *Allaire Corp. v. Okumus,* 433 F.3d 248, 249–50 (2d Cir.2006). The complaint need not contain "detailed factual allegations." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Nonetheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

 To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). Determining whether the allegations of a complaint nudge a plaintiff's claims across the line from merely "conceivable to plausible" requires the Court to "draw on its judicial experience and common sense." *Id.* at 1950–51. In making its assessment, the Court may consider, in addition to the plaintiff's factual averments, any written instrument upon which the plaintiff necessarily relies, regardless of whether it is attached to the complaint or incorporated therein by refer-

---

**10.** Although Ba did not include a copy of his right to sue letter in his complaint, neither OCA nor DC 37 suggests that he failed to exhaust his administrative remedies.

ence. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002). When a plaintiff is proceeding *pro se,* the Court also may rely on any opposition papers in assessing the legal sufficiency of the plaintiff's claims. *See Crum v. Dodrill,* 562 F.Supp.2d 366, 373 n. 13 (N.D.N.Y.2008) (citing *Gadson v. Goord,* No. 96 Civ. 7544(SS), 1997 WL 714878, at *1 n. 2 (S.D.N.Y. Nov. 17, 1997)). Furthermore, the Court may take judicial notice of indisputable facts. *See* Fed.R.Evid. 201. Legal conclusions masquerading as factual averments, however, may not be taken into account. *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.

▪ Because the Plaintiffs are proceeding *pro se,* the Court must read their pleadings "liberally" and interpret them "to raise the strongest arguments" that they may suggest. *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010). "Dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Carvel v. Ross,* No. 09 Civ. 722(LAK)(JCF), 2011 WL 856283, at *8 (S.D.N.Y. Feb. 16, 2011).

▪ When faced with a motion to dismiss pursuant to both Rules, a court should "decide the 'jurisdictional question [under Rule 12(b)(1) ] first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction.'" *Tirone v. N.Y. Stock Exch., Inc.,* No. 05 Civ. 8703(WHP), 2007 WL 2164064, at *3 (S.D.N.Y. July 27, 2007) (quoting *Magee v. Nassau Cnty. Med. Ctr.,* 27 F.Supp.2d 154, 158 (E.D.N.Y. 1998)).

### III. *Claims against OCA*

#### A. *ADEA, ADA, Section 1983, NYSHRL, and NYCHRL*

Under the Eleventh Amendment to the United States Constitution, a state and its agencies generally are immune from suit in federal court. *See Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54–56, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). As the administrative arm of the New York State Unified Court System, OCA is "not a distinct entity amenable to suit, but is an integral part of [the] state." *Levi v. N.Y.,* No. 10–CV–3980 (JG)(RLM), 2010 WL 559520, at *3 (E.D.N.Y. Dec. 22, 2010) (quoting *Winokur v. Office of Ct. Admin.,* 190 F.Supp.2d 444, 450 (E.D.N.Y.2002)) (brackets in original); *see Gollomp v. Spitzer,* 568 F.3d 355, 365–68 (2d Cir.2009) ("[T]he New York State Unified Court System is unquestionably an arm of the State ... entitled to Eleventh Amendment sovereign immunity.") (internal quotation marks and citation omitted); *accord Anderson v. State of N.Y., Office of Ct. Admin. of Unified Ct. Sys.,* 614 F.Supp.2d 404, 426 (S.D.N.Y.2009); *Canales–Jacobs v. N.Y. State Office of Ct. Admin.,* 640 F.Supp.2d 482, 498 (S.D.N.Y.2009).

▪ There are only two exceptions to Eleventh Amendment sovereign immunity, which apply when there has been an explicit and unequivocal waiver of immunity by a state or a similarly clear abrogation of the immunity by Congress. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Through its enactment of Title VII, Congress has abrogated immunity with respect to race discrimination claims. *See Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). However, immunity has neither been waived nor abrogated with respect to Plaintiffs' other statutory claims. All of those claims consequently must be dismissed as against OCA. *See, e.g., Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 67, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) (sovereign immunity under the ADEA not abrogated); *Canales–Jacobs,* 640 F.Supp.2d at 498–99 (New York State has not waived

immunity with respect to ADEA claims); *Quern v. Jordan,* 440 U.S. 332, 340–42, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (Congress did not abrogate state sovereign immunity by enacting Section 1983); *Darcy v. Lippman,* 356 Fed.Appx. 434, 436 (2d Cir.2009) (no abrogation of state immunity under ADEA and ADA); *Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38–40 (2d Cir.1977) (New York State has not waived immunity with respect to Section 1983 claims); *Martin v. Baruch Coll.,* No. 10 Civ. 3915(DAB), 2011 723565, at *2 (S.D.N.Y. Feb. 18, 2011) (New York has not waived immunity for ADA claims); *Tuckett v. N.Y. State Dep't of Tax. & Fin.,* No. 99 Civ. 0679(BSJ), 2000 WL 1028662, at *2 (S.D.N.Y. July 26, 2000) (no waiver of immunity for NYSHRL claims); *Leiman v. State of N.Y.,* No. 98 Civ. 5538(MHD), 2000 WL 1364365, at *7 (S.D.N.Y. Sept. 21, 2000) (no waiver of immunity for NYCHRL claims).

### B. *Title VII*

#### 1. *Applicable Law*

##### a. *Exhaustion*

Title VII requires that plaintiffs exhaust their administrative remedies by filing timely charges of discrimination with the EEOC before they may initiate suits arising out of their charges. 42 U.S.C. §§ 2000e–5(e)(1), (f)(1); *see Falso v. Gates Chili Cent. Sch. Dist.,* 408 Fed.Appx. 494, 495–96 (2d Cir.2011) (Title VII). A claim not expressly raised in an EEOC charge may be brought in federal court only if it is "reasonably related" to the claim filed with the agency. *See Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.,* 990 F.2d 1397, 1401 (2d Cir.1993), *superseded on other grounds by statute as recognized in Hawkins v. 1115 Legal Serv. Care,* 163 F.3d 684, 693 (2d Cir.1998). A claim is "reasonably related" if it involves conduct that "would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Butts,* 990 F.2d at 1402 (internal quotation marks omitted).

There are only three situations in which courts have held that claims not expressly set forth in an EEOC charge are reasonably related: (i) when the claim was "loosely pleaded" in the EEOC charge and "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination;" (ii) when the plaintiff alleges further retaliatory discrimination resulting from the filing of an EEOC charge; and (iii) when the "plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Id.* at 1402–03.

##### b. *Discrimination*

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). A plaintiff asserting a Title VII claim must satisfy an initial burden of "proving by the preponderance of the evidence a *prima* facie case of discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Accordingly, "a plaintiff must show: (1) membership in a protected class, (2) qualification for the position sought, (3) an adverse employment action, and (4) circumstances giving rise to an inference of discrimination." *Ghosh v. N.Y. City Dep't of Health,* 413 F.Supp.2d 322, 332 (S.D.N.Y.2006); *Pasha v. William M. Mercer Consulting, Inc.,* No. 00 Civ. 8362(RWS), 2004 WL 188077, at *3 (S.D.N.Y. Feb. 2, 2004). The Second Circuit has described the plaintiff's burden

at this initial step as "de *minimis.*" *Zimmermann v. Assocs. First Capital Corp.,* 251 F.3d 376, 381 (2d Cir.2001).

#### c. Retaliation

■ Title VII also makes it unlawful for an employer to retaliate against an employee who has exercised her statutory right to complain about conduct that she considers discriminatory. 42 U.S.C. § 2000e–3(a). A retaliation claim, however, is "not dependent on the merits of the underlying discrimination complaint." *Davis v. State Univ. of N.Y.,* 802 F.2d 638, 642 (2d Cir.1986). Thus, an employee must establish a different *prima facie* case in the retaliation context. To prevail, the employee must show that: (1) the employee engaged in a protected activity; (2) the employer knew of this activity; (3) the employer took adverse action against the employee; and (4) there was a causal relation between the adverse action and the employee's protected activity. *Cifra v. Gen. Elec. Co.,* 252 F.3d 205, 216 (2d Cir. 2001); *Holt v. KMI–Cont'l, Inc.,* 95 F.3d 123, 130 (2d Cir.1996).

■ The filing of a formal complaint with an anti-discrimination agency clearly constitutes "protected activity" under Title VII. 42 U.S.C. § 2000e–3(a); *see Terry v. Ashcroft,* 336 F.3d 128, 140–42 (2d Cir.2003). Additionally, Title VII's anti-retaliation language applies to "informal protests of discriminatory employment practices." *Sumner v. U.S. Postal Serv.,* 899 F.2d 203, 209 (2d Cir.1990); *see Rodriguez v. Beechmont Bus Serv.,* 173 F.Supp.2d 139, 149 (S.D.N.Y.2001) (quoting *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 566 (2d Cir.2000)) ("A 'protected activity' under Title VII does not have to 'rise to the level of a formal complaint.' "). A plaintiff need not prove that the specific actors within an organization were aware that the plaintiff made allegations of retaliation to make out a *prima facie* retaliation claim; rather, "general corporate knowledge that the plaintiff has engaged in a protected activity" is sufficient. *Gordon v. N.Y. City Bd. of Educ.,* 232 F.3d 111, 116 (2d Cir.2000).

■ The Supreme Court has explained that the "adverse action" requirement "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 67, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). Accordingly, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in th[e Title VII] context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68, 126 S.Ct. 2405. Assuming that there is an adverse action, "proof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon,* 232 F.3d at 117. Mere temporal proximity between a plaintiff's protected activity and an adverse employment action is sufficient to create an inference of retaliation for purposes of proving a *prima facie* case. *El Sayed v. Hilton Hotels Corp.,* 627 F.3d 931, 931 (2d Cir.2010).

### 2. Application of Law to Facts

#### a. Exhaustion

OCA contends that Drammeh and Trivedi failed to exhaust their administrative remedies properly before filing their suits. (Drammeh OCA Mem. at 7–10; Trivedi OCA Mem. at 7–10). OCA further maintains that neither Drammeh's nor

Trivedi's claims fall within any of the *Butts* exceptions. (*Id.*).

In an EEOC intake questionnaire, Drammeh alleged that he was the victim of discrimination based on his race, national origin, color, and religion. (Drammeh Affirm. in Opp'n Attach. at 5 ¶ 4). After he was interviewed, however, his formal charge of discrimination noted that he was an "African American male of African National Origin" and contended only that he had been discriminated against on the basis of his race and national origin. (Drammeh Morales Aff. Ex. B). Thereafter, by the time that he filed his *pro se* complaint in this action, Drammeh reverted to claiming discrimination based on his color and religion. In addition, Drammeh claimed discrimination based on his "gender/sex." (*Id.* Ex. A; Drammeh Compl. ¶ II.D).

■ As a matter of law, a claim of color discrimination may be reasonably related to claims of race and national origin discrimination since the EEOC could be expected to have explored that possibility as part of its investigation. *See Fraser v. N.Y. City Bd. of Educ.*, No. 96 Civ. 0625(SHS), 1998 WL 55170, at *4 (S.D.N.Y. Feb. 10, 1998) (plaintiff's EEOC charge alleging race discrimination based on being a Hebrew Israelite "raised the specter that he had been discriminated against because of his national origin, religion or color"); *Sharabura v. Taylor*, No. 03–CV–1866 (JG), 2003 WL 22170601, at *3 (E.D.N.Y. Sept. 16, 2003) (claim that Russian employees were treated differently than African–American employees "would no doubt alert the EEOC of the potential for race and color discrimination claims" even though EEOC charge only alleged national origin discrimination). Accordingly, OCA's motion to dismiss that aspect of Drammeh's Title VII claim should be denied.

■ On the other hand, even though Drammeh checked the "religion" box on his intake questionnaire, both that document and his formal EEOC charge lack any substantive allegations that would have alerted the EEOC that he was pursuing a religious discrimination claim. (*See* Drammeh Affirm. in Opp'n Attach. at 4–7; Drammeh Morales Aff. Ex. B). In the absence of any language suggesting that OCA acted out of religious animus, the mere fact that Drammeh checked the box for religious discrimination does not entitle him to pursue that claim in this forum since it is not one that the EEOC could reasonably have been expected to pursue based on his allegations. *Cooper v. Xerox Corp.*, 994 F.Supp. 429, 436 (W.D.N.Y. 1998) ("[M]erely checking a box, or failing to check a box does not necessarily control the scope of the charge. The more critical analysis is whether there is any explanation or description supporting a particular claim."). Similarly, Drammeh cannot pursue a claim of gender or sex discrimination because he failed to make any substantive allegations related to that form of discrimination at any point in his dealings with the EEOC; indeed, he did not even check that box on either the intake questionnaire or his EEOC charge. (*See* Drammeh Affirm. in Opp'n Attach. at 5 ¶ 4; Drammeh Morales Aff. Ex. B).

■ In her own EEOC charge, Trivedi checked only the box for retaliation, noting that, "[a]lthough [she] appealed [OCA's] decision to institute a test that required all interpreters to successfully pass or be terminated, the decision to terminate [her] remained intact." (Trivedi Morales Aff. Ex. B). The substance of her charge, however, was similar to that of the other plaintiffs—namely, that she is an Indian national of "Asian ethnicity," who was subjected to a proficiency exam that individuals of other ethnic backgrounds were not required to take. (*Id.*). Although she repeated this national origin claim in her

complaint in this action, Trivedi also checked the box for "gender/sex" discrimination, noting that she is a female. (*See id.* Ex. A ¶ 2.D). Suffice it to say, even if this claim were supported in the text of Trivedi's complaint, it cannot reasonably be considered to be related to the claims of retaliation and national origin discrimination alleged in her EEOC charge. *Alonzo v. Chase Manhattan Bank, N.A.,* 25 F.Supp.2d 455, 458 (S.D.N.Y.1998) ("[I]t is the substance of the charge and not its label that controls."). Trivedi's claim of gender or sex discrimination therefore should be dismissed.

#### b. *Discrimination*

The Plaintiffs each allege that OCA's decision to subject them to new English examinations, after years of successful employment as OCA employees, constitutes discrimination on either racial, ethnic, national origin, or color grounds. (*See* Ba Compl.; Drammeh Compl.; Seck Compl.; Bhattacharjee Am. Compl.; Trivedi Am. Compl.). Each of the Plaintiffs further alleges that after failing that exam—in some instances more than once—they were terminated from their full-time interpreter positions in violation of Title VII. (*Id.*).

■■■ As noted earlier, the burden on the Plaintiffs under Title VII at this preliminary stage is *de minimis. Zimmermann,* 251 F.3d at 381. In their *pro se* complaints, the Plaintiffs each have identified one or more protected classes of which they are members. (*See* Ba Compl. ¶ II.D; Drammeh Compl. ¶ II.D; Seck Compl. ¶ II.D; Bhattacharjee Am. Compl. ¶ II.D; Trivedi Am. Compl. ¶ II.D). Additionally, the Plaintiffs each have alleged that they were qualified to serve as interpreters and suffered an adverse employment action as a consequence of being terminated from positions that they had held for many years. (*See* Ba Compl.

¶ II.E; Drammeh Compl. ¶ II.E; Seck Compl. ¶ II.E; Bhattacharjee Am. Compl. ¶ II.E; Trivedi Am. Compl. ¶ II.E). The Plaintiffs thus have adequately pleaded three of the four elements of a Title VII claim.

The remaining element requires the Plaintiffs to allege that the adverse employment action they suffered—here, termination—occurred under circumstances giving rise to an inference of discrimination. In that regard, each of the Plaintiffs, other than Trivedi, alleges that they were subjected to a testing regimen not required of other interpreters who were either non-minorities or were members of other non-African or non-Bangladeshi groups. (Ba Compl. Attach. at 2; Drammeh Morales Aff. Ex. B; Seck Compl. ¶ II.E; Bhattacharjee Am. Compl. ¶ II.E). Indeed, Bhattacharjee alleges that the test administered to him had more subparts and required a higher passing score than the tests administered to non-Bengali interpreters. (Bhattacharjee Aff. in Opp'n ¶¶ 16–17). Although these allegations ultimately may prove to be unfounded, they are more than sufficient at this stage to satisfy the causation element of a Title VII claim. *See, e.g., Boykin v. KeyCorp,* 521 F.3d 202, 215 (2d Cir.2008) (complaint meets pleading requirements when it states that plaintiff is a member of a protected class, describes the defendant's actions, and alleges that plaintiff was treated differently from similarly situated employees because of protected status).

By comparison, in her amended complaint, Trivedi complains principally about conditions in the testing area. (*See* Trivedi Am. Compl. Attach. at 2 (noting that the test utilized a "television whose audio was … defective and [that] there was an echo in the room")). Although that pleading does not allege that other non-minority interpreters were treated more

favorably, in her papers opposing the motion to dismiss, Trivedi avers that she "suspected that there was a deliberate attempt" to terminate her based on her failing proficiency exam grades "because of [her] national origin (Indian) or color (Brown–Asian)." (Trivedi Am. Compl. ¶ 3(I)). This conclusory allegation plainly does not give rise to an inference of discrimination. *See Iqbal,* 129 S.Ct. at 1949–50; *see, e.g. Barriera v. Bankers Trust,* No. 98 Civ. 3641(MBM), 2003 WL 22387099, at *6 (S.D.N.Y. Oct. 20, 2003) (no inference of discrimination when plaintiff supported "her allegations of a discriminatory motive only with conclusory statements about being a victim of race discrimination").

Nevertheless, in her amended complaint, Trivedi also alleges that interpreters of languages such as Mandarin, Chinese, and Greek were treated differently in that they were only required to take a half-page written test in 1991 "and no oral test was given to them." (Trivedi Am. Compl. Attach. at 2). Similarly, in her affirmation opposing OCA's motion, Trivedi states that "other" interpreters appointed a few years before her "were given a different type of test which was easy to pass." (Trivedi Affirm. in Opp'n ¶ 3(J)). While this may refer to time-barred conduct,[11] Trivedi's papers, construed liberally, may be alleging that the tests administered to Asians in 2008 were harder than those administered to other interpreters. If so, Trivedi appears to have stated—albeit barely—facts sufficient to warrant an inference that the circumstances surrounding her testing and subsequent termination were discriminatory. OCA's motion to dismiss her Title VII discrimination claim therefore should be denied.

#### c. *Retaliation*

■ In their complaints, Ba, Drammeh, and Seck each claim that they were subjected to harassment, discriminatory proficiency testing, and, ultimately, termination as a consequence of their involvement in the Class Action against OCA in 2001. (*See* Ba Compl. ¶ II.E; Drammeh Compl. ¶ II.E; Seck Compl. ¶ II.E). OCA counters that "it is simply absurd to suggest that OCA would terminate [these plaintiffs'] employment many years later in retaliation for bringing [that] lawsuit." (Ba OCA Mem. at 7; Drammeh OCA Mem. at 10; Seck OCA Mem. at 7).

In the prior Class Action, the plaintiffs evidently contended that the decision to have their class of "exotic interpreters" work as per diem interpreters, rather than as full-time employees, constituted unlawful discrimination based on their national origin. (*See* Drammeh Compl. ¶ II.E; Seck Compl. ¶ II.E). If so, participation in the Class Action clearly constituted "protected activity" within the meaning of Title VII. *See Wright v. Stern,* 450 F.Supp.2d 335, 373 (S.D.N.Y.2006) ("The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination."). Ba, Drammeh, and Seck therefore each have adequately alleged that they engaged in protected activity.

Nevertheless, for a plaintiff to prevail on a retaliation claim there must be a causal relationship between the protected activity and the adverse action to which the plaintiff was subjected. The Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an alleg-

---

**11.** Under Title VII, an employee typically must file a charge of discrimination with the EEOC within 300 days of a discriminatory act. *See* 42 U.S.C. § 2000e–5(e)(1); *Fields v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 301 F.Supp.2d 259, 262 (S.D.N.Y.2004).

edly retaliatory action." *Gorman–Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir.2001). Here, however, Ba, Drammeh, and Seck each allege that OCA's conduct nearly ten years after their participation in the Class Action came to an end was retaliatory. In the absence of any other proof, the mere fact that they were part of the Class Action many years earlier is insufficient to establish the causation element of their Title VII retaliation claims. *See, e.g., Chamberlin v. Principi*, 247 Fed.Appx. 251, 254 (2d Cir.2007) (causal relationship not established when adverse employment action occurred five months after filing EEOC charge); *Nicastro v. N.Y. City Dep't of Design and Constr.*, 125 Fed. Appx. 357, 358 (2d Cir.2005) (demotion ten months after protected activity not close enough in time to "demonstrate a causal nexus"); *Wright v. N.Y. City Off–Track Betting Corp.*, No. 05 Civ. 9790(WHP), 2008 WL 762196, at *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Cunningham v. Consol. Edison Inc.*, No. 03–CV–3522 (CPS), 2006 WL 842914, at *19 (E.D.N.Y. Mar. 28, 2006) (collecting cases)). Accordingly, because Ba, Drammeh, and Seck have failed to plead a plausible causal nexus between the Class Action in 2001 and their eventual termination, their retaliation claims against OCA should be dismissed.

██ Unlike Ba, Drammeh, and Seck, Trivedi does not allege that she participated in the Class Action. (*See* Trivedi Am. Compl.). Indeed, from the face of her complaint it appears that the only instance in which she may have acted in opposition to OCA was when she complained to DC 37 about the allegedly defective testing equipment used during the oral portion of her exam. (Trivedi Am. Compl. ¶ II.E). That action, however, does not constitute a "protected activity" under Title VII. *See Kamrowski v. Morrison Mgmt. Specialist*, No. 05 Civ. 9234(KMK), 2010 WL 3932354, at *20 (S.D.N.Y. Sept. 29, 2010) (plaintiff's

reports regarding mismanagement of coworkers and "sanitation problems," unrelated to discrimination, are not protected activity); *Santucci v. Veneman*, No. 01 Civ. 6644(CBM), 2002 WL 31255115, at *4 (S.D.N.Y. Oct. 8, 2002) (plaintiff's objection to "allegedly corrupt system of payoffs" is not Title VII-protected activity); *Rodriguez v. Beechmont Bus Serv., Inc.*, 173 F.Supp.2d 139, 150 (S.D.N.Y.2001) (dismissing Title VII retaliation claim premised on complaints about worker safety). In fact, in her amended complaint, Trivedi concedes that she was fired because she failed the proficiency exam, *not* because she engaged in any protected activity. (Trivedi Am. Compl. ¶ II.E). Trivedi's retaliation claim against OCA therefore should be dismissed.

Bhattacharjee's pleadings also could be liberally construed to suggest that he is bringing a retaliation claim. (*See* Bhattacharjee Am. Compl.). Although Bhattacharjee did not check off the "retaliation" box as a basis for his amended complaint, he has annexed thereto a copy of his EEOC Charge, in which he alleged that he was subjected to unfair and discriminatory testing conditions when he took the language exam a second time after he had "protested and filed a grievance along with other Bengali individuals." (*Id.* Attach. at 5). The problem that Bhattacharjee faces is that his EEOC charge discloses that the testing conditions were substantially the same the first time he took the exam— which was *before* he filed his grievance. Accordingly, even if Bhattacharjee's amended complaint was read to allege retaliation, he has not set forth any facts which make it plausible that the test conditions to which he was subjected were causally linked to his earlier filing of a grievance. Any retaliation claim that Bhattacharjee may be asserting therefore should be dismissed.

## IV. *Claims against DC 37*

### A. *Title VII and the ADEA*

The complaints filed by Ba, Drammeh, Seck, and Trivedi list myriad grievances regarding DC 37. First, Ba, Drammeh, and Seck each contend that OCA unjustly administered an unwarranted new language proficiency exam to a small group of interpreters with the complicity of DC 37. (Ba Compl. ¶ II.E; Drammeh Compl. ¶ II.E; Seck Compl. ¶ II.E). Second, they claim that DC 37 coerced them to take that exam under false pretenses. (Ba Affirm. in Opp'n Attach. at 1; Drammeh Affirm. in Opp'n Attach. at 1; Seck Affirm. in Opp'n Attach. at 1). Finally, Ba, Drammeh, and Seck maintain that DC 37 provided inadequate training for the exam. (Ba Compl. Attach. at 2; Drammeh Morales Aff. Ex. B). Trivedi similarly alleges that she complained to DC 37 about the faulty testing conditions following the oral portion of her exam, and that DC 37 then came to an agreement with OCA regarding the proficiency test without Trivedi's approval or consent. (Trivedi Am. Compl. ¶ II.E). Finally, in his papers in opposition to OCA's motion, Seck alleges that DC 37 failed to assess the utility and probative value of the new exam and did not properly inspect the testing equipment. (Seck Second Affirm. in Opp'n Attach. at 2).

Under Title VII, labor unions, like employers, are prohibited from discriminating on the basis of race, color, religion, sex or national origin. 42 U.S.C. § 2000e–2(c). Similarly, under the ADEA, unions may not discriminate against individuals over the age of forty because of their age. 29 U.S.C. § 623(c). Courts are divided, however, as to the circumstances under which a union may be held liable for the discriminatory acts of an employer.

In *Goodman v. Lukens Steel Company*, the Supreme Court held that a union is liable under Title VII when it intentionally "[refuses] to file grievable racial discrimi-

nation claims ... knowing that the employer [is] discriminating." 482 U.S. 656, 669, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987) (superceded by statute on other grounds). The *Goodman* court failed to decide, however, whether a union could be held liable if it merely acquiesced in the employer's discriminatory acts. *Id.* at 665–66, 107 S.Ct. 2617.

Courts in this district since have held that to hold a union accountable for an employer's discriminatory conduct under Title VII or the ADEA, a plaintiff must show "(1) that the [union] breached [its] duty of fair representation by allowing an alleged [violation] to go unrepaired and (2) that the [union's] actions were motivated by [discriminatory] animus." *Morris v. Amalgamated Lithographers of Am.*, 994 F.Supp. 161, 170 (S.D.N.Y.1998) (citing *Dolittle v. Ruffo*, No. 88 Civ. 1175, 1990 WL 2648, at *4 (N.D.N.Y. Jan. 16, 1990)) (Title VII); *accord Jiggetts v. Allied Int'l Union*, No. 07 Civ. 11572(JSR)(RLE), 2010 WL 2158331, at *3 (S.D.N.Y. Mar. 17, 2010) (Title VII); *Cooper v. Wyeth Ayerst Lederle*, 106 F.Supp.2d 479, 502 (S.D.N.Y. 2000) (Title VII); *Parker v. Metro. Transp. Auth.*, 97 F.Supp.2d 437, 448 (S.D.N.Y.2000) (ADEA). A union breaches the duty of fair representation when its conduct is "arbitrary, discriminatory, or in bad faith." *Morris*, 994 F.Supp. at 170 (citing *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)). On the other hand, mere "negligence on the part of the union ... does not give rise to a breach of the duty of fair representation." *Coleman v. City of N.Y.*, No. 99–CV–1159 (JG), 1999 WL 1215570, at *4 (E.D.N.Y. Dec. 7, 1999).

In this case, Ba, Drammeh, Seck, and Trivedi contend that DC 37 should have (1) intervened when OCA subjected them to a proficiency exam, (2) provided better exam training for the exam, and (3)

addressed the technical difficulties that arose when it was administered. These alleged wrongs, at best, constitute negligence on the part of DC 37. *See, e.g., Gorham v. Transit Workers Union of Am.,* No. 98 Civ. 313(JGK), 1999 WL 163567, at *3 (S.D.N.Y. Mar. 24, 1999) ("[A]n error in judgment is insufficient to sustain a member's burden of showing that his union breached its duty of fair representation."). Moreover, even if DC 37's alleged misconduct rose to the level of a breach of the duty of fair representation, there has been no plausible showing that DC 37 was motivated by any discriminatory animus. Ba, Drammeh, Seck, and Trivedi's Title VII claims against DC 37 therefore should be dismissed.

 Ba, Drammeh, and Seck also maintain that DC 37 induced them to take the proficiency exam by disseminating false information about it. Here again, even if this action qualifies as a breach of the duty of representation, their pleadings do not set forth any facts that make it plausible that DC 37 acted out of a discriminatory animus. *See Olabopo v. 1199 SEIU,* No. 10–CV–1317 (DLI)(LB), 2011 WL 1204749, at *2 (E.D.N.Y. Mar. 29, 2011) (dismissing claim that union "did not do anything about [plaintiff's] allegedly discriminatory termination"); *Washington v. Niagara Mohawk Power Co.,* 103 F.Supp.2d 517, 522 (N.D.N.Y.2000) (plaintiff failed to "indicate *words* or *actions* by Defendants that might in even a general sense suggest a tendency toward racial bias") (emphasis in original).

Finally, Ba, Drammeh, Seck, and Trivedi have utterly failed to plead a *prima facie* claim of age discrimination. (*See* Ba Compl.; Drammeh Compl.; Seck Compl.; Trivedi Am. Compl.). Indeed, aside from setting forth their respective ages in their complaints, these plaintiffs have not pleaded any facts suggesting that DC 37 discriminated against them because of their ages or even that DC 37 had ageist tendencies. (*See id.*). Accordingly, the ADEA claims that Ba, Drammeh, Seck, and Trivedi bring against DC 37 should be dismissed.

B. *Breach of Duty of Fair Representation*

 Liberally construed, the complaints of Ba, Drammeh, Seck, and Trivedi further allege that DC 37 breached its duty of fair representation under both the National Labor Relations Act ("NLRA") and the Labor Management Relations Act ("LMRA"). That duty requires a labor organization, as the exclusive representative of the employees in a bargaining unit, "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Marquez v. Screen Actors Guild, Inc.,* 525 U.S. 33, 44, 119 S.Ct. 292, 142 L.Ed.2d 242 (1998) (quotation marks omitted). A union member consequently may bring a "hybrid" claim against his union *and* his employer under the LMRA when the union has breached its duty of fair representation and the employer has breached its collective bargaining agreement. *DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 164, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). A plaintiff must commence such a suit within six months from the time he "knew or should have known of the breach of the duty of fair representation." *White v. White Rose Food,* 128 F.3d 110, 114 (2d Cir.1997); *DelCostello,* 462 U.S. at 171, 103 S.Ct. 2281 (applying the NLRA's six-month statute of limitations to hybrid claims brought under the LMRA).

 Here, there is a substantial likelihood that the claims that Ba, Drammeh, Seck, and Trivedi bring against DC 37 under the federal labor laws are time

barred since they did not file their lawsuits until late 2010. There is no need to resolve this issue, however, because federal courts lack "subject matter jurisdiction over duty of fair representation claims brought by employees of political subdivisions." *Gear v. Dep't of Educ.*, No. 07 Civ. 11102(NRB), 2010 WL 5297850, at *3–4 (S.D.N.Y. Dec. 21, 2010) (citing *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir.2009)). As noted previously, OCA and the New York State Unified Court System are political subdivisions of the State. Accordingly, even if these claims were timely, the Court would lack subject matter jurisdiction over any claim that DC 37 breached the duty of fair representation.

C. *State Law Claims*

■ The standards for recovery under the NYSHRL are the same as the federal standards under Title VII. *See Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 305 n. 3, 786 N.Y.S.2d 382, 819 N.E.2d 998 (2004). Accordingly, because the plaintiffs have failed to plead a plausible Title VII claim against DC37, their NYSHRL claims against DC37 also should be dismissed.

■ Although the same rules previously applied to NYCHRL claims, *see id.*, in 2005, the New York City Council enacted the Local Civil Rights Restoration Act, N.Y.C. Local Law No. 85 (2005), which altered the playing field. Pursuant to that statute, the NYCHRL must be "construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed." *Id.* § 7. As a consequence, federal law now "provides 'a floor below which the City's Human Rights law cannot fall, rather than a ceiling above which the local law cannot

rise.'" *Stevens v. New York*, No. 09 Civ. 5237(CM), 2011 WL 3055370, at *8 (S.D.N.Y. July 20, 2011) (quoting *Williams v. N.Y. City Hous. Auth.*, 61 A.D.3d 62, 872 N.Y.S.2d 27, 31 (1st Dep't 2009)). "Nonetheless, a plaintiff must still link the adverse action to a discriminatory or retaliatory motivation." *Joseph v. N.Y. City Dep't of Corr.*, No. 10–CV–1265 (NGG)(LB), 2011 WL 1843162, at *9 (E.D.N.Y. May 13, 2011) (citing *Williams*, 872 N.Y.S.2d at 35).

■ Here, even if the NYCHRL is liberally construed, the plaintiffs have utterly failed to allege facts which plausibly suggest that DC 37 undertook the actions that it did either out of discriminatory animus or in an effort to retaliate against them for engaging in protected activity. For this reason, DC 37 is entitled to the dismissal of the NYCHRL claims as well.

V. *Conclusion*

For the reasons set forth above, OCA's motions to dismiss (ECF Nos. 7, 20) should be granted with respect to the Plaintiffs' Section 1983, ADEA, NYSHRL, NYCHRL, and Title VII retaliation claims, but denied with respect to the Plaintiffs' Title VII claims of discrimination based on their race, national origin, and color. Additionally, DC 37's motion to dismiss the Plaintiffs' ADEA, Title VII, fair representation, and state law claims (ECF Nos. 11, 12) should be granted. As a consequence, the only defendant remaining in this case will be OCA.

VI. *Notice of Procedure for Filing of Objections to this Report and Recommendation*

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Proce-

dure. *See also* Fed.R.Civ.P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty and to the chambers of the undersigned at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Crotty. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).